# EXHIBIT A

Case 1:04-cv-00593-GMS    Document 31-2    Filed 06/10/2005    Page 1 of 4

UNITED STATES OF AMERICA, Plaintiff, -v- ALL FUNDS ON DEPOSIT IN UNITED BANK OF SWITZERLAND, NEW YORK, NEW YORK, ACCOUNT NUMBER 101WA263232000 UP TO AND INCLUDING THE SUM OF $ 3,083,376.00 IN THE NAME OF SAWAN EXCHANGE COMPANY, LLC, AND ALL PROCEEDS TRACEABLE THERETO, Defendant-in-rem.

01 Civ. 2091 (JSR)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

2003 U.S. Dist. LEXIS 101

January 6, 2003, Decided
January 7, 2003, Filed

**DISPOSITION-1:** [*1] Claimant's motion for summary judgment and summary adjudication of issues denied in all respects.

### CASE SUMMARY

**PROCEDURAL POSTURE:** Plaintiff United States brought an in rem action against funds deposited in a bank account, seeking a forfeiture of the funds, and proceeds traceable to the funds, alleging that the claimant account owner, a currency exchange company, undertook to transfer sums equivalent tot he funds to Iran in violation of 31 C.F.R. § 560.204. The company moved for summary judgment or for summary adjudication of issues.

**OVERVIEW:** The company contended that § 560.204 was too vague to support forfeiture, that it was not a U.S. person subject to the regulation, and that the actual transfers were family remittances which were exempt from the transfer prohibition. The company also argued that its conduct was not willful, and that certain of the transferred funds were not themselves the direct fruits of criminal activities. The court first held that the regulation was not vague since offering to exchange a customer's money and deliver it to a foreign country for a fee is well within the ordinary meaning of supplying a service. Further, the company's conduct occurring in the United States was subject to forfeiture, regardless of whether the company was a U.S. person, and the family remittance exception did not apply to the company which was not a depository institution. Also, no showing of willfulness was required since no criminal penalty was sought, and the transferred funds were not required to be direct proceeds of criminal activity, but only traceable to such activity.

**OUTCOME:** The company's motion for summary judgment or for summary adjudication of issues was denied.

**CORE TERMS:** regulation, technology, indirectly, unlawful activity, reexportation, summary judgment, forfeiture, remittance, currency, entity, exportation, bank account, ambiguity, claimant, customers, savings, vague, transferred, traceable, supplied, wherever

**LexisNexis(TM) Headnotes**

*Civil Procedure > Remedies > Forfeitures*

*Immigration Law > Enforcement > Civil Liability > Vehicle Forfeiture & Seizure*

[HN1] 18 U.S.C.S. § 981(a)(1)(C) subjects to forfeiture any property, real or personal, which constitutes or is derived from proceeds traceable to any offense constituting "specified unlawful activity," as defined in 18 U.S.C.S. § 1956(c)(7). Section 1956(c)(7)(D), in turn, defines "specified unlawful activity" to include violations of the International Emergency Economic Powers Act, 50 U.S.C.S. § 1701 et seq., and regulations promulgated thereunder.

*International Trade Law > Imports & Exports*

[HN2]See 31 C.F.R. § 560.204.

*Governments > Legislation > Interpretation*

[HN3]In determining whether a statute is so vague as to support a due process challenge, the statute must be evaluated as applied to the facts of the case.

*Governments > Legislation > Interpretation*

[HN4]A regulation need not define a term where the ordinary meaning is manifest.

*International Trade Law > Imports & Exports*

[HN5]The exemption from the prohibition of transfers to Iran for family remittances only applies to transfers of family remittances made by a "United States depository institution," 31 C.F.R. § 560.516(a), which is defined as any entity (including its foreign branches) organized under the laws of any jurisdiction within the

United States, or any agency, office, or branch located in the United States of a foreign entity, that is engaged primarily in the business of banking (for example, banks, savings banks, savings associations, credit unions, trust companies, and United States bank holding companies). 31 C.F.R. § 560.319.

**COUNSEL:** For UNITED STATES OF AMERICA, plaintiff: Daniel Ruzumna, Office of the United States Attorney, New York, NY.

For SAWAN EXCHANGE CO., claimant: Peter N. Wang, Scott D. Corrigan, Friedman, Wang & Bleiberg, P.C., New York, NY.

For SAWAN EXCHANGE CO., claimant: Mark E. Beck, Anthony A. De Corso, Beck, De Corso, Daly & Kreindler, Los Angeles, CA.

**JUDGES:** JED S. RAKOFF, U.S.D.J.

**OPINIONBY:** JED S. RAKOFF

**OPINION:** MEMORANDUM ORDER

JED S. RAKOFF, U.S.D.J.

The Government, proceeding in rem under the Civil Asset Forfeiture Reform Act ("CAFRA"), 18 U.S.C. § 981, seeks forfeiture of $ 3,083,376 held in a New York bank account in the name of Sawan Exchange Company, LLC ("Sawan"). The Government alleges that Sawan, a currency exchange company, undertook on behalf of certain of its customers to transfer to Iran sums equivalent to the amount here sought to be forfeited, in violation of Executive Orders promulgated under the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. §§ 1701-07. See United States v. All Funds on Deposit in United Bank of Switzerland, 188 F. Supp. 2d 407, 408-10 (S.D.N.Y. 2002). [*2] Sawan, as claimant, now moves for summary judgment, or, in the alternative, for summary adjudication of certain specified issues.

[HN1]The provision of CAFRA here pertinent, § 981(a)(1)(C), subjects to forfeiture "any property, real or personal, which constitutes or is derived from proceeds traceable to . . . any offense constituting 'specified unlawful activity,'" as defined in section 1956(c)(7) of Title 18. Section 1956(c)(7)(D), in turn, defines "specified unlawful activity" to include violations of IEEPA and regulations promulgated thereunder. Among these regulations are the Iranian Transactions Regulations, 31 C.F.R. Part 560, Section 560.204, which in relevant part provide that:

[HN2]Except as otherwise authorized pursuant to this part . . . the exportation, reexportation, sale or supply, directly or indirectly, from the United States, or by a United States person, wherever located, of any goods, technology, or services to Iran or the Government of Iran is prohibited, including the exportation, reexportation, sale or supply of any goods, technology, or services to a person in a third country undertaken with knowledge or reason to know that:

(a) Such goods, technology, or [*3] services are intended specifically for supply, transshipment, or reexportation, directly or indirectly, to Iran or the Government of Iran; or

(b) Such goods, technology, or services are intended specifically for use in the production of, for commingling with, or for incorporation into goods, technology, or services to be directly or indirectly, supplied, transshipped, or reexported exclusively or predominantly to Iran or the Government of Iran.

In its instant motion, Sawan argues, first, that key terms of these regulations are so vague as to deprive it of due process. Four of the five terms of which Sawan complains, however, do not pertain to this case. See Chapman v. United States, 500 U.S. 453, 467, 114 L. Ed. 2d 524, 111 S. Ct. 1919 [HN3](in determining whether a statute is so vague as to support a due process challenge, the statute must be evaluated as applied to the facts of the case). The fifth term, "services," carries its ordinary legal meaning -- see Black's Law Dictionary 1372 (7th ed. 1999), defining "service" as "the act of doing something useful for a person or company for a fee" -- and is here applied without difficulty or ambiguity, for offering [*4] to exchange a customer's money and deliver it (by whatever method) to a foreign country for a fee is well within the ordinary meaning of supplying a "service." While Sawan, in what partakes more of an exercise in literary deconstructionism than legal analysis, purports to find an invitation to ambiguity in the fact that "services" is not further defined in the regulation, [HN4]a regulation need not define a term where the "ordinary meaning is manifest." United States v. Ehsan, 163 F.3d 855, 858 (4th Cir. 1998).

Sawan next argues that the regulations only apply to a "U.S. person" and that Sawan does not fall within the definition thereof. See C.F.R. § 560.314. In actuality, however, the regulations cover U.S. activity by anyone, whether a "U.S. person" or otherwise, the latter limitation only being relevant to activity conducted entirely abroad. Specifically, § 560.204 prohibits "the exportation, reexportation, sale or supply, directly or indirectly, from the United States, or by a United States person, wherever located, of any

goods, technology, or services . . ." (emphasis added). The disjunctive "or" indicates that the prohibition reaches domestic activities [*5] by anyone, whether or not a "U.S. person," and that it also reaches foreign activities when conducted by a "U.S. person." In this case, the evidence is undisputed that Sawan received funds in the United States and placed them in a New York bank account to be thereafter exchanged for Iranian currency to be delivered to individuals in Iran. It is therefore clear that Sawan's services were in substantial measure supplied, directly and indirectly, from the United States and thus fall within the above-quoted prohibition even if no "U.S. person" was involved.

Sawan also argues that the funds that were the subject of the actual transfers (the presently attached funds being surrogates therefor) were "family remittances" exempt from the prohibition of transfers to Iran. See § 560.516(a)(3). But [HN5]this exemption only applies to transfers of family remittances made by a "United States depository institution," see § 560.516(a), which is defined as "any entity (including its foreign branches) organized under the laws of any jurisdiction within the United States, or any agency, office or branch located in the United States of a foreign entity, that is engaged primarily in the business of [*6] banking (for example, banks, savings banks, savings associations, credit unions, trust companies and United States bank holding companies)." 31 C.F.R. § 560.319. The plain meaning of this language (as well as its evident purpose to limit family remittance transfers to those bank-like entities regularly subject to U.S. oversight and regulation) does not reach a currency exchange facility like Sawan. n1



- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n1 As this is a matter of statutory interpretation, Sawan's reliance on an "expert" affidavit is irrelevant and, indeed, inappropriate.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

Sawan further contends that a "specified unlawful activity" only occurs when a person wilfully violates an order under IEEPA or when an officer, director, or agent of a corporation knowingly participates in such violation. See 50 U.S.C. § 1705(b); 31 C.F.R. § 560.701(a)(2). Under both these provisions, however, a showing of wilfulness is required only where a criminal penalty is sought, whereas here [*7] the Government seeks only a civil remedy.

Similarly, Sawan's claim that certain of the transferred funds were not "proceeds" covered by § 981(a)(1)(C) because they were not themselves the direct fruits of criminal activities seeks to import into the statutory scheme an additional requirement found nowhere in the statutory language, which requires only that the proceeds be "traceable" to the specified unlawful activity. Hence, this argument, like the others, must be rejected.

Finally, as a fall-back, Sawan argues that, even if it is not entitled to complete or partial summary judgment, the Court should resolve, at this stage and in Sawan's favor, two other issues: first, that the $ 507,648 of transferred funds remitted before July 2000 did not involve the defendant account and therefore cannot support a forfeiture; and, second, that because the Government allegedly knew at the time of the transfers of some $ 277,000 in July and August of 2000, the Government is not entitled to recover that portion of the money. But even if the Court were otherwise inclined to exercise its discretion and reach these issues at this stage, the Government has adduced sufficient evidence contradicting [*8] Sawan's factual assertions to require the matters to be resolved at trial.

For the foregoing reasons, claimant's motion for summary judgment and summary adjudication of issues is hereby denied in all respects. Counsel are directed to jointly call Chambers by January 17, 2003 to schedule a date for trial.

SO ORDERED.

JED S. RAKOFF, U.S.D.J.

Dated: New York, New York

January 6, 2003