IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>INACOM CORP., et al.,<br>            Debtors. | Chapter 11<br><br>Bankruptcy Case No. 00-2426 (PJW) |
| INACOM CORP., et al.,<br>            Plaintiff,<br>v.<br>TECH DATA CORPORATION,<br>            Defendant. | Civil Action No. 04-CV-148 (GMS) |
| INACOM CORP., et al.,<br>            Plaintiff,<br>v.<br>DELL COMPUTER CORPORATION,<br>            Defendant. | Civil Action No. 04-CV-582 (GMS) |
| INACOM CORP., et al.,<br>            Plaintiff,<br>v.<br>LEXMARK INTERNATIONAL, INC.,<br>            Defendant. | Civil Action No. 04-CV-583 (GMS) |
| INACOM CORP., et al.,<br>            Plaintiff,<br>v.<br>INGRAM ENTERTAINMENT, INC.,<br>            Defendant. | Civil Action No. 04-CV-593 (GMS) |

472949
{00196013.DOC v 2}

## HEWLETT-PACKARD COMPANY'S OPENING BRIEF IN SUPPORT OF ITS MOTION FOR A SEPARATE TRIAL OF THE THIRD-PARTY CLAIMS

MORRIS, NICHOLS, ARSHT & TUNNELL
William H. Sudell, Jr. (No. 463)
Derek C. Abbott (No. 3376)
Daniel B. Butz (No. 4227)
1201 N. Market Street
Wilmington, DE 19899-1347
(302) 658-9200

- and -

FRIEDMAN DUMAS & SPRINGWATER LLP
Ellen A. Friedman
Cecily A. Dumas
Gail S. Greenwood
Brandon C. Chaves
One Maritime Plaza, Suite 2475
San Francisco, CA 94111
(415) 834-3800

Attorneys for Third-Party Defendant
Hewlett-Packard Company

July 6, 2005

472949
{00196013.DOC v 2}

i.

## TABLE OF CONTENTS

TABLE OF CITATIONS ....... ii

INTRODUCTION ....... 1

NATURE AND STAGE OF PROCEEDING ....... 1

SUMMARY OF ARGUMENT ....... 2

STATEMENT OF FACTS ....... 3

LEGAL ARGUMENT ....... 5

    I.    THE COURT HAS BROAD DISCRETION TO ORDER A SEPARATE TRIAL OF THIRD-PARTY CLAIMS UNDER FED. R. CIV. PROC. 42(B). ....... 5

    II.    A SEPARATE TRIAL WILL PROMOTE CONVENIENCE AND ECONOMY BY RESOLVING THE PRINCIPAL PREFERENCE ACTIONS BEFORE THE CONTINGENT THIRD-PARTY ACTIONS. ....... 6

    III.    A SEPARATE TRIAL WILL MORE QUICKLY RESOLVE THE PREFERENCE ACTIONS BY ALLOWING THE PARTIES TO EFFICIENTLY PACKAGE AND PRESENT THE DISTINCT ISSUES OF FACT AND LAW. ....... 7

    IV.    TRYING THE ACTIONS TOGETHER WOULD CAUSE HP TO INCUR UNNECESSARY COSTS. ....... 9

CONCLUSION ....... 11

ii.

## TABLE OF CITATIONS

Cases

*Akzona, Inc. v. E. I. Du Pont De Nemours & Co.*,
    607 F. Supp. 227 (D. Del. 1984) ................................................................. 9

*Barr Labs, Inc. v. Abbott Labs*,
    978 F.2d 98 (3rd Cir. 1992) ..................................................................... 6, 7

*Corrigan v. Methodist Hospital*,
    160 F.R.D. 55 (E.D. Pa. 1995) ..................................................................... 6

*Gottlieb v. Tropicana Hotel and Casino*,
    2000 WL 806993 (E.D. Pa. June 8, 2000) .................................................. 6

*Idzojtic v. Pennsylvania R.R. Co.*,
    456 F.2d 1228 (3d Cir. 1972) ....................................................................... 5

*In re Kaiser Steel Corp.*,
    110 B.R. 20 (D. Colo. 1990) .................................................................... 6, 7

*In re Revere Copper & Brass, Inc.*,
    32 B.R. 577 (Bankr. S.D.N.Y. 1983) .......................................................... 5

Statutes

11 U.S.C. § 547 ............................................................................................... 1

Fed. R. Civ. Pro. 42 ............................................................................ 1, 2, 5, 9

Other Authorities

9 Wright & Miller, *Federal Practice and Procedure:*
    *Civil 2d*, § 2388 (1995) ............................................................................. 6

1.

## INTRODUCTION

Third-Party Defendant Hewlett-Packard Company ("HP") submits this brief in support of its motion, pursuant to Rule 42(b) of the Federal Rules of Civil Procedure ("Fed. R. Civ. Proc."), for an order for a separate trial of the third-party claims brought by Lexmark International, Inc. ("Lexmark") and Tech Data Corporation ("Tech Data").

## NATURE AND STAGE OF PROCEEDING

The estate of Inacom Corp. ("Inacom") has brought the above-captioned actions against Dell Computer Corp. ("Dell"), Ingram Entertainment, Inc. ("Ingram"), Tech Data, and Lexmark (collectively referred to as "Defendants") to recover alleged preferential transfers under 11 U.S.C. § 547 (the "Preference Actions"). Lexmark and Tech Data have filed third-party complaints against HP, as successor in interest to Compaq Computer Corporation ("Compaq"), claiming breach of contract and indemnity (the "Third-Party Actions," and together with the Preference Actions, the "Actions").

The Court previously consolidated the Actions for pretrial proceedings. The Court entered a scheduling order on October 4, 2004, which was later amended in order to accommodate the Defendants' request for extensions of the discovery periods. Fact discovery closed on March 31, 2005. Expert discovery closes on June 10, 2005. The Court has scheduled trials of these matters beginning on October 17, 2005.

Lexmark has filed a motion for a jury trial, which the parties have briefed but which has not been set for hearing as of the date hereof. Tech Data has filed an

2.

untimely[1] motion to amend its third-party complaint against Compaq to add new claims in excess of $900,000, which motion has also been briefed, but has not been set for hearing as of the date hereof.

The Defendants have collectively moved the Court to consolidate all of the Actions for trial, including the Third-Party Actions filed by only two of the four Defendants. HP has opposed the motion on the grounds that the Third-Party Actions involve completely different questions of law and fact than the Preference Actions, HP's liability is contingent on the outcome of the Preference Actions, consolidation would delay the resolution of the principal Preference Actions, and HP would be forced to incur unnecessary costs by attending proceedings that do not involve and have no relation to HP. HP's opposition requested that the Court order a separate trial of the Third-Party Actions if the Court grants the Defendants' motion to consolidate. No date has been set for hearing on the Defendants' motion to consolidate as of the date hereof.

HP now moves the Court to order separate trials of the Third-Party Actions and files this brief in support of its motion.

## SUMMARY OF ARGUMENT

1. A separate trial of the Third-Party Actions will promote judicial economy pursuant to Fed. R. Civ. Proc. 42(b) by allowing the principal Preference Actions to be resolved before the contingent Third-Party Actions. The Third-Party Actions will not require a trial if the Defendants are successful in the Preference Actions.

---

[1] Under the court's Scheduling Order dated October 4, 2004, the deadline for amending the pleadings was November 18, 2004. Tech Data filed its motion on April 8, 2005.

472949
{00196013.DOC v 2}

2.  The resolution of the Preference Actions will be expedited by holding separate trials because it will eliminate the need for evidence to be presented which is unrelated to the Preference Actions. The evidence in the Preference Actions will consist of detailed expert testimony regarding the solvency of Inacom during the preference period and testimony regarding the course of conduct between Inacom and its vendors regarding payment. None of this evidence has any relevance to HP's alleged liability to Lexmark or Tech Data in the Third-Party Actions. Nor are the legal issues common. The Third-Party Actions involve the interpretation of New York law, which governs the APA (as defined below) and Lexmark's and Tech Data's claims as third-party beneficiaries thereof, and the interpretation of the laws of Florida, Kentucky, and Delaware with respect to common counts asserted by Lexmark and Tech Data. None of the claims asserted in the Third-Party Actions involve federal bankruptcy law.

3.  If the Third-Party Actions were tried at the same time as the Preference Actions, the result would be a longer and more complicated trial with an increased risk of confusion by the trier of fact. HP would be also forced to incur unnecessary costs by attending preference action proceedings that are irrelevant to HP.

## STATEMENT OF FACTS

On June 16, 2000, Inacom and its affiliates filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware. Prior to the bankruptcy filing, Inacom had been engaged in the business of supplying computer hardware and related services to wholesale and retail customers. Dell, Tech Data, Lexmark and Ingram were vendors to Inacom, selling it

4.

various computer components, peripherals and supplies. Each of the Defendants, along with other suppliers to Inacom, received payments from Inacom within 90 days prior to the bankruptcy filing, some of which were in payment of Defendants' receivables months after such debts were due. The representatives of the Inacom estate brought actions against numerous suppliers, including Defendants, to recover any such payments that constituted preferential payments under the Bankruptcy Code. The Preference Actions will involve the presentation of evidence relating to payments by Inacom to Defendants in the aggregate amount of over $16 million.

Five months before the bankruptcy filing, on January 4, 2000, Compaq and Inacom entered into an Asset Purchase Agreement ("APA") whereby Compaq agreed to purchase certain assets related to Inacom's hardware distribution division and to assume certain accounts payable associated with the purchased assets. The APA is solely between Inacom and its affiliates, and Compaq and its subsidiary, and expressly provides that no other party is an intended beneficiary of the APA.

At closing, and pursuant to the terms of the APA, Inacom delivered to Compaq its list of accounts payable to be assumed by Compaq under the APA. Compaq duly paid all of the payables that it assumed.

Inacom also paid all of the liabilities that it had retained under the APA. Inacom, however, delayed releasing some of its payments to the vendors for months after the closing of the APA. Unbeknownst to Compaq, but fully disclosed to the vendors (including Tech Data and Lexmark), Inacom had written checks before the closing of the APA to pay vendors for certain of its payables that it would retain under the APA, but

5.

delayed mailing the checks for weeks or months after the closing. As a result, some of Inacom's payments fell within the preference period, and Inacom is now seeking to recover them for the benefit of all creditors.

Consistent with their knowledge at the time of the closing, neither Tech Data nor Lexmark ever attempted to collect any of these receivables from Compaq or its affiliates. Tech Data and Lexmark knew perfectly well that Inacom was holding checks for certain of the payables it had retained under the APA, and knew that they would receive payment from Compaq for certain of their receivables, and receive payment from Inacom for others. Nonetheless, after the Preference Actions were filed, Tech Data and Lexmark fabricated a litigation "theory" that Compaq must somehow be held responsible to make them whole if Inacom's payments for the payables it retained under the APA are recovered as preferences. This theory, embodied in the contingent Third-Party Actions, should be tried separately after the trial of the Preference Actions.

## LEGAL ARGUMENT

### I. THE COURT HAS BROAD DISCRETION TO ORDER A SEPARATE TRIAL OF THIRD-PARTY CLAIMS UNDER FED. R. CIV. PROC. 42(b).

Fed. R. Civ. Pro. 42(b) allows a court to order a separate trial of a third-party claim "in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy." *Idzojtic v. Pennsylvania R.R. Co.*, 456 F.2d 1228, 1230 (3d Cir. 1972) (decision to bifurcate is a matter within the broad discretion of the trial judge and to be decided on case-by-case basis); *see also In re Revere Copper & Brass, Inc.*, 32 B.R. 577, 581 (Bankr. S.D.N.Y. 1983) (additional

6.

reasons for separate trials include avoidance of confusion resulting from similarity or dissimilarity of claims, avoidance of prejudice, unusual difficulty in proving a particular issue, and the inherent power of the court to regulate the order of proof at trial).

### II.   A SEPARATE TRIAL WILL PROMOTE CONVENIENCE AND ECONOMY BY RESOLVING THE PRINCIPAL PREFERENCE ACTIONS BEFORE THE CONTINGENT THIRD-PARTY ACTIONS.

Bifurcation is particularly appropriate when resolution of a single claim or issue could be dispositive of the entire case. 9 Wright & Miller, *Federal Practice and Procedure: Civil 2d*, § 2388, p. 476 (1995); *Corrigan v. Methodist Hospital*, 160 F.R.D. 55, 57 (E.D. Pa. 1995) (typically, separate or bifurcated trials are held for counterclaims or third-party claims, for claims that are logical prerequisites of each other, or to determine affirmative defenses); *Barr Labs, Inc. v. Abbott Labs*, 978 F.2d 98, 115 (3rd Cir. 1992) (bifurcation of separate issues was appropriate when subsequent evidence would have been rendered irrelevant upon the determination of the initial issue of the relevant product market in an antitrust case); *Gottlieb v. Tropicana Hotel and Casino*, 2000 WL 806993 *1 (E.D. Pa. June 8, 2000) (district court bifurcated trial of third-party claim against insurer because it was contingent on the outcome of the principal action and involved different issues of law); *In re Kaiser Steel Corp.*, 110 B.R. 20, 25 (D. Colo. 1990) (bankruptcy court severed a debtor's fraudulent conveyance claims from the defendant's indemnification counterclaims based on the fact that (1) the counterclaims were contingent on the outcome of the principal claims, and (2) the counterclaims involved different areas of law than the principal claims).

7.

Here, the Third-Party Actions are claims for indemnity of any amount that Lexmark or Tech Data may be found liable to Inacom. Accordingly, a trial must be held and judgment entered against Lexmark and Tech Data before knowing whether a trial of the third-party claims will be necessary. Trying the Actions together would require the trier of fact to consider evidence related to the Preference Actions at the same time as evidence related to the state law claims – evidence that is irrelevant to the Preference Actions and that will be unnecessary if the Defendants are successful. In such circumstances, bifurcation is a more convenient and a more efficient use of judicial resources.

### III. A SEPARATE TRIAL WILL MORE QUICKLY RESOLVE THE PREFERENCE ACTIONS BY ALLOWING THE PARTIES TO EFFICIENTLY PACKAGE AND PRESENT THE DISTINCT ISSUES OF FACT AND LAW.

Separate trials are appropriate when different claims require the presentation of evidence concerning factual circumstances not relevant to other claims and when bifurcation will result in a quicker resolution of the primary claim. *In re Kaiser Steel Corp.*, 110 B.R. at 25 (approving separate trials of plaintiff's fraudulent conveyance claims and defendants' contingent counterclaims because bifurcation was a more efficient use of the court's resources and would result in the quicker resolution of the primary actions); *see also Barr Labs, Inc.*, 978 F.2d at 115 (upholding bifurcation because it enhanced juror comprehension of the complex issues presented and excluded the presentation of lengthy evidence which may have been irrelevant upon the determination of the principal issue).

8.

Here, the Preference Actions involve distinct issues of fact and bankruptcy law, including whether Inacom was solvent when the transfers were made and whether the transfers were made in the ordinary course of business. The Defendants state that they intend to present expert testimony regarding Inacom's financial condition at the time of the transfers and testimony regarding the ordinary course of business between Inacom and the Defendants and in Inacom's industry. These issues have nothing to do with Compaq or HP, do not affect the Third-Party Actions, and do not require any of the same evidence.

The Third-Party Actions, on the other hand, involve issues of state law. Lexmark and Tech Data have brought breach of contract claims under the APA based on their alleged status as third-party beneficiaries to that agreement. The plain language of the APA expressly denies the parties' intent to give rights to third-parties such as Lexmark and Tech Data to bring any claims based on the APA. The APA contains a choice of law provision stating that it is governed by New York law. Therefore, whether Lexmark or Tech Data have standing as third-party beneficiaries and can bring a claim to enforce the APA will be a question of New York contract law – an issue that has nothing to do with the Preference Actions.

Lexmark and Tech Data also claim that a letter sent by Compaq to certain vendors of Inacom constituted an independent contractual obligation to assume or guarantee all of Inacom's payment obligations to them. They have asserted common counts of breach of contract, indemnity, promissory estoppel, and breach of guaranty. The merits of these claims will be determined by Florida law in Tech Data's case, and Kentucky law in Lexmark's case – not bankruptcy law. Adjudication of these third-party

claims, therefore, requires consideration of wholly different evidence and different law than that required to adjudicate Inacom's Preference Actions against the Defendants.

A separate trial of the Third-Party Actions will allow the litigants to present these two different groups of law and evidence separately. This will allow the Preference Actions to be resolved more quickly since the trier of fact will not have to consider evidence of the preference claims and defenses together with evidence about the asset purchase transaction between Compaq and Inacom and the subsequent actions of Lexmark and Tech Data.

### IV.   TRYING THE ACTIONS TOGETHER WOULD CAUSE HP TO INCUR UNNECESSARY COSTS.

Fed. R. Civ. Proc. 42(b) allows a court to sever those issues, which, if tried with the main issues, would lead to additional expense. *Akzona, Inc. v. E. I. Du Pont De Nemours & Co.*, 607 F. Supp. 227, 232 (D. Del. 1984) (separate trials on patent infringement issues and antitrust issues would prevent unnecessary expenses by resolving dispositive claims first).

Here, trying the Actions together would be essentially conducting two separate trials – the Preference Actions and the Third-Party Actions – lumped into one proceeding. This would require HP's counsel to attend the Preference Action trials of Lexmark and Tech Data which do not involve HP or Compaq, causing HP to incur significant and unnecessary costs. Inacom's counsel would also be forced to sit through Lexmark and Tech Data's state law claims against HP, incurring additional expenses to the bankruptcy estate even though the Third-Party Actions will have no effect on Inacom. Furthermore, if the Defendants are successful in the Preference Actions, there will be no

472949
{00196013.DOC v 2}

10.

trial of the Third-Party Actions and HP's counsel will have sat silently through unrelated trials for nothing. The unnecessary delay and expense that would be caused is precisely what Rule 42(b) serves to avoid.

11.

## CONCLUSION

A separate trial of the Third-Party Actions will promote judicial economy, allow for a faster resolution of the Preference Actions, prevent HP from incurring unnecessary costs, and cause no harm to any of the Defendants. Accordingly, HP requests that the Court order a separate trial of the Third-Party Actions.

Dated: July 6, 2005
      Wilmington, Delaware

MORRIS, NICHOLS, ARSHT & TUNNELL

_____
William H. Sudell, Jr. (No. 463)
Derek C. Abbott (No. 3376)
Daniel B. Butz (No. 4227)
1201 N. Market Street
Wilmington, DE 19899-1347
(302) 658-9200

- and -

FRIEDMAN DUMAS & SPRINGWATER LLP
Ellen A. Friedman
Cecily A. Dumas
Gail S. Greenwood
Brandon C. Chaves
One Maritime Plaza, Suite 2475
San Francisco, CA 94111
(415) 834-3800

472949
{00196013.DOC v 2}