UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| INACOM CORP., et al.<br><br>Plaintiffs<br>v.<br><br>DELL COMPUTER CORP.<br><br>Defendant | Civil Action No. 04-CV-582 (GMS) |
| INACOM CORP., et al.<br><br>Plaintiffs<br>v.<br><br>LEXMARK INTERNATIONAL, INC.<br><br>Defendant | Civil Action No. 04-CV-583 (GMS) |
| INACOM CORP., et al.<br><br>Plaintiffs<br>v.<br><br>INGRAM ENTERTAINMENT INC.<br><br>Defendant | Civil Action No. 04-CV-593 (GMS) |

**OPENING MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION
TO EXCLUDE THE EXPERT TESTIMONY AND REPORT OF STUART A. GOLLIN**

| | |
|---|---|
| Patricia P. McGonigle<br>Seitz, Van Ogtrop & Green, P.A.<br>222 Delaware Avenue, Suite 1500<br>P.O. Box 68<br>Wilmington, Delaware 19899<br>Tel.:   (302) 888-0600 | Sabrina L. Streusand<br>G. James Landon<br>Texas State Bar No. 11701700<br>Hughes & Luce, L.L.P.<br>111 Congress Avenue, Suite 900<br>Austin, Texas 78701<br>Tel.:   (512) 482-6800<br><br>Attorneys for Defendant<br>Dell Computer Corp. |
| Thomas G. Whalen Jr. (No. 4034)<br>Stevens & Lee, P.C.<br>1105 North Market Street, 7th Floor<br>Wilmington, Delaware 19801<br>Tel:  (302) 425-3307 | Culver V. Halliday<br>Emily L. Pagorski<br>Stoll, Keenon & Park, LLP<br>2650 AEGON Center<br>400 West Market Street<br>Louisville, Kentucky 40202-3377<br>Tel:  (502) 568-9100<br><br>Attorneys for Defendant<br>Lexmark International, Inc. |
| Thomas G. Macauley (ID No. 3411)<br>Zuckerman Spaeder LLP<br>919 Market Street, Suite 990<br>P.O. Box 1028<br>Wilmington, Delaware  19899-1028<br>Tel.: (302) 427-0400 | Jonathan P. Hersey<br>Sheppard, Mullin, Richter & Hampton, LLP<br>600 Anton Blvd., 18th Floor<br>Costa Mesa, California 92626<br>Tel.: (714) 513-5100<br><br>Attorneys for Defendant<br>Ingram Entertainment Inc. |

Dated August 15, 2005

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS ................................................................................................................. i

TABLE OF AUTHORITIES ........................................................................................................... ii

I.    INTRODUCTION ............................................................................................................... 1

II.   NATURE AND STAGE OF THE PROCEEDINGS ........................................................ 1

III.  SUMMARY OF THE ARGUMENT ................................................................................ 2

IV.  STATEMENT OF FACTS ................................................................................................. 3

V.   ARGUMENT AND AUTHORITIES ................................................................................ 4

       (1)   The Ordinary Course of Business ........................................................................... 4

       (2)   The Court's Gatekeeper Function ........................................................................... 5

       (3)   Gollin Is Not An Expert On The Ordinary Course Of Business
             For The Relevant Industries ..................................................................................... 6

       (4)   Gollin's Testimony Is Not Reliable ........................................................................ 7

       (5)   Gollin's Testimony Is Not Relevant ....................................................................... 9

VI.  CONCLUSION ................................................................................................................... 10

# TABLE OF AUTHORITIES CITED

**Cases**                                                                          **Page**

*Fiber Lite Corp. v. Molded AcousticalProds.*
*(In re Molded Acoustical Products, Inc.)*, 18 F.3d 317 (3rd Cir. 1994)..........................4

*In re Tolona Pizza Prods. Corp.*, 3 F.3d 1029 (7th Cir. 1993).............................................4

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993)............................... 5, *passim*

*Kumho Tire Company v. Carmichael*, 526 U.S. 137 (1999)............................................... 5, *passim*

*Watkins v. New Castle County*, 374 F. Supp. 2d 379 (D. Del. 2005) ................................6

*Chemipal Ltd. v. Slim-Fast Nutritional Foods Int'l*, 350 F. Supp. 2d 582 (D. Del. 2004) ..............6

*Hebbler v. Turner*, 2004 U.S. Dist. LEXIS 3258,*7 (E.D. La. 2004) ................................6

*Moore v. Ashland Chemical, Inc.*, 151 F.3d 269 (5th Cir. 1998) .......................................6

*Redman v. John D. Brush & Co.*, 111 F.3d 1174 (4th Cir. 1997)......................................6

*Barrett v. Atl. Richfield Co.*, 95 F.3d 375 (5th Cir. 1996) ...............................................6

*United States v. Downing*, 753 F.2d 1224 (3rd Cir. 1985) ...............................................9

*Troisio v. E.B. Eddy Forest Prods. Ltd.,*
*(In re Global Tissue,* LLC.), 302 B.R. 808 (D. Del. 2003)................................................9

**Statutes**

11 U.S.C. 547(c)(2)(C).........................................................................................................4

**Federal Rules of Evidence**

Fed. R. Evid. 702............................................................................................................1, *passim*

# I. INTRODUCTION

Defendants Dell Computer Corp. ("Dell"), Lexmark International, Inc. ("Lexmark") and Ingram Entertainment Inc. ("Ingram") (collectively "Defendants"), pursuant to Rule 702 of the Federal Rules of Evidence ("Fed. R. Evid."), move the Court to exclude the proffered expert testimony and report of Mr. Stuart A. Gollin. Mr. Gollin's testimony is neither reliable nor relevant to the issues presented in this case.

# II. NATURE AND STAGE OF THE PROCEEDINGS

On June 28, 2004, the Court's order was entered withdrawing the reference to the United States Bankruptcy Court for the District of Delaware ("Bankruptcy Court") of a number of adversary proceedings brought by Plaintiff InaCom Corp. ("InaCom") in its bankruptcy case.[1] The adversary proceedings from which the reference to the Bankruptcy Court was withdrawn include the four separate proceedings brought by InaCom against Defendants. Each of the former adversary proceedings is now pending as a separate action on the Court's docket.

On September 27, 2004, the Court held a telephonic scheduling conference in eight of the former adversary proceedings brought by InaCom from which the reference to the Bankruptcy Court had been withdrawn. Included were the actions against Defendants. Following the telephonic scheduling conference, on October 4, 2004, the Court entered a scheduling order scheduling various pretrial deadlines and the eight former adversary proceedings — including the four actions brought by InaCom against Defendants — for trial on October 17, 2005.

InaCom disclosed Stuart Gollin ("Mr. Gollin") as an expert witness who would be called at trial to testify as to whether payments made within the ninety-day pre-petition period were made in the "ordinary course of business." Mr. Gollin's expert report indicates that he used reports obtained from Dun & Bradstreet ("D & B") and interviews of companies to compile his

---

[1] *In re InaCom Corp., et al.*, Bankr. Case No. 00-2426 (PJW).

report. (Expert Report of Stuart A. Gollin ("Gollin Report") at p. 1-3).[2] On July 26, 2005, Defendants deposed Mr. Gollin. Based on Mr. Gollin's report and deposition testimony, Defendants seek to exclude Mr. Gollin's testimony because it is neither reliable nor relevant to the issues presented in this case.

### III. SUMMARY OF THE ARGUMENT

Mr. Gollin, throughout his report and deposition, has demonstrated that his testimony and report cannot survive the Court's "gate-keeper" review. Mr. Gollin's report indicates that it is based upon reports obtained from D & B and interviews of certain companies. (Gollin Report at p. 1-3.) In his report, Mr. Gollin states that "[w]e have obtained the 'Detailed Payment History' of each D & B report and analyzed the data. Most of the reports go back only a few months; *they do not represent a population sufficient for us to form an opinion on the information.*" (Gollin Report at p. 8 (emphasis added)). Mr. Gollin also admitted that "[he] could not and would not draw a statistical conclusion from the interviews that were taken, the results of the interviews that were taken." (Deposition of Stuart A. Gollin, July 26, 2005 ("Gollin Depo.") at p. 123).[3] As such, Mr. Gollin has admitted that both bases for his opinions are unreliable. These statements alone are sufficient basis for the Court to exclude Mr. Gollin's testimony and report. Numerous other grounds, however, also support exclusion of Mr. Gollin's testimony and report.

Mr. Gollin lacks expertise in the matters to which he plans to testify. Mr. Gollin has never done a report regarding the "ordinary course" defense to a preference claim. While he may have proper credentials to testify to other economic issues, it is clear that he has no expertise in this area.

---

[2]  A copy of Mr. Gollin's report is attached at 1.

[3]  Copies of pages of Mr. Gollin's July 26, 2005 deposition which are referenced in this memorandum are attached at 2.

Furthermore, Mr. Gollin's conclusions are based on the reports of the industry practice several years after the time-period at issue in these cases. Compounding this error, Mr. Gollin failed to assess the specific industry of each of the Defendants. Rather, he combined the data regarding three distinct industries (hardware, software and telecommunications) which could, but did not necessarily, include the Defendants and averaged the data to determine the ordinary course of business. (Gollin Depo. at p. 45-6, 66-7, 70 and 137). Mr. Gollin did not even weight the results according to the amount of receivables of the companies studied. Instead, he averaged the data by the number of payments received by each company. (Gollin Depo. at p. 124-5). As a result, the payments made to a company with $100,000,000 in receivables were weighted the same as payments made to a corporation with $13,000 dollars in receivables. (Gollin Depo. at p. 124-5, 128). Mr. Gollin also failed to deduct receivables that were not based on the companies' sales in the relevant industry.

For all of these reasons, Mr. Gollin's testimony must be excluded under Fed. R. Evid. 702 and *Daubert*.

### IV. STATEMENT OF FACTS

Prior to its bankruptcy, InaCom was a "leading single-source provider of information technology products and technology management services to primarily Fortune 1000 clients." (InaCom Complaint, ¶ 1). Defendants were each vendors to InaCom.

On June 16, 2000, InaCom filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code with the Bankruptcy Court. In May 2002, InaCom filed a number of adversary proceeding complaints against those that had received payments from InaCom within the ninety-day period preceding the filing of its bankruptcy petition. Included among the defendants to these adversary proceedings were Defendants.

InaCom alleges that it made payments to Defendants during the ninety-day period preceding the filing of its petition. (InaCom Complaint, ¶ 7). InaCom asked the Bankruptcy Court to "avoid" the payments and order Defendants to repay, pursuant to 11 U.S.C. §§ 547 and 550, the money they received from InaCom during the ninety-day period.

Defendants each filed answers to InaCom's complaints denying the allegations that they had received preferential payments. In addition, Defendants each alleged in their answers that the payments they received from InaCom during the ninety-day period were not preferential because (1) InaCom was solvent at the time the individual payments were made and (2) InaCom had made the payments in the ordinary course of its business.

InaCom disclosed Stuart Gollin ("Mr. Gollin") as an expert witness who would be called at trial to testify as to whether the payments to the Defendants were made in the "ordinary course of business." On July 26, 2005, Defendants took the deposition of Mr. Gollin.

## V.  ARGUMENT AND AUTHORITIES

### (1)  The Ordinary Course of Business

Each of the Defendants has asserted that the allegedly preferential payments made to it were made according to ordinary business terms under 11 U.S.C. 547(c)(2)(C). "[O]rdinary business terms' refers to the range of terms that encompasses the practice in which firms similar in some general way to the creditor in question engage . . . ." *Fiber Lite Corp. v. Molded Acoustical Prods. (In re Molded Acoustical Products, Inc.)*, 18 F. 3d 217, 224-225 (3d Cir. 1994). The Third Circuit cited with approval *In re Tolona Pizza Prods.Corp.*, 3 F.3rd 1029 (7th Cir. 1993). In that case the Seventh Circuit Court of Appeals considered the breadth of the defense. The court stated that only those dealings that are so idiosyncratic as to fall outside the broad range should be deemed extraordinary and therefore outside the scope of subsection C.

The Third Circuit substitutes "unusual" for idiosyncratic. Defendants assert that all of the payments made to them fall within this broad range. In support of its claim that the payments are not subject to 11 U.S.C. 547(c)(2)(C), Plaintiff relies on the expert report and proffered testimony of Mr. Gollin.

### (2) The Court's Gatekeeper Function

The seminal case of *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) holds that the court must act as the gatekeeper to determine "whether reasoning or methodology underlying the proffered testimony is scientifically valid and whether that reasoning or methodology properly can be applied to the facts in issue." *Id.* at 593. This gatekeeper function also extends to non-scientific expert testimony. *Kumho Tire Company v. Carmichael*, 526 U.S. 137 (1999). Fed. R. Evid. 702 provides that:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

In the wake of these directives, expert testimony is admissible only if it "rests on a reliable foundation and is relevant to the task at hand." *Id.* at 141 (quoting *Daubert*, 509 U.S. at 597). Factors that are relevant to this determination include testing, peer review, error rates, and whether the methodology is accepted in the relevant community. *Daubert*, 509 U.S. at 593-94. To withstand the court's gatekeeper review, the expert must "employ[] in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho*, 526 U.S. at 152.

SL1 564527v1/004907.00003

The party offering the expert testimony bears the burden of proving both reliability and that the testimony will assist the trier of fact to understand and dispose of relevant issues by a preponderance of the evidence. *Watkins v. New Castle County*, 374 F. Supp. 2d 379, 385 (D. Del. 2005); *Chemipal Ltd. v. Slim-Fast Nutritional Foods Int'l*, 350 F. Supp. 2d 582 (D. Del. 2004); *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592 (1993); *Hebbler v. Turner*, 2004 U.S. Dist. LEXIS 3258,*7 (E.D. La. 2004);[4] *Moore v. Ashland Chemical, Inc.*, 151 F.3d 269 (5th Cir. 1998). "To meet this burden, the defendants cannot simply rely on their expert's assurances that she has utilized generally accepted scientific methodology. Rather, some objective, independent validation of the expert's methodology is required." *Hebbler*, 2004 U.S. Dist LEXIS at *7 (citing *Moore*, 151 F.3d at 269).

### (3) Gollin Is Not An Expert On The Ordinary Course Of Business For The Relevant Industries

The testimony of an expert is only permissible if the expert has specialized knowledge or training sufficient to qualify him to opine on an issue within his field of expertise, and the expert's opinion must be confined to that field. *See Redman v. John D. Brush & Co.*, 111 F.3d 1174, 1179 (4th Cir. 1997); *Barrett v. Atl. Richfield Co.*, 95 F.3d 375, 382 (5th Cir. 1996). Mr. Gollin lacks any special knowledge or training on the issue of "ordinary course" evaluations of the industries in which the Defendants are classified. He candidly admits throughout his deposition that this is the first time he has prepared this type of report for industry standards in a preference case. (Gollin Depo. at p. 47-48, 106, 159). Mr. Gollin also admitted that he had no experience in the relevant industries. (Gollin Depo. at p. 58-60). While Mr. Gollin has extensive experience in accounting, this general expertise does not qualify him to testify as an expert on the ordinary course of business of Defendants' specific industries.

---

[4] A copy of *Hebbler* is attached at 3.

### (4) Gollin's Testimony Is Not Reliable

In order to determine whether testimony is reliable, courts should consider factors including "testing, peer review, error rates, and whether the methodology is accepted in the relevant community." *Daubert*, 509 U.S. at 593-94. All of these factors weigh against the admissibility of Mr. Gollin's testimony.

The most conclusive proof that his testimony and report are unreliable, however, comes from Mr. Gollin himself. In his report, Mr. Gollin states that "[w]e have obtained the 'Detailed Payment History' of each D & B report and analyzed the data. Most of the reports go back only a few months; *they do not represent a population sufficient for us to form an opinion on the information*." (Gollin Report at p. 8 (emphasis added)). Additionally, during his deposition, Mr. Gollin admitted that "[he] could not and would not draw a statistical conclusion from the interviews that were taken, the results of the interviews that were taken." (Gollin Depo. at p. 123). Furthermore, Mr. Gollin admitted that he merely relied on the reports that he obtained from D & B. (Gollin Depo. at p. 84-5, 113, 118, 125-6, 135). He did not verify the data that he received from D & B. (Gollin Depo. at p. 93). Nor was he able to explain apparent discrepancies in the information that he collected from D & B. (Gollin Depo. at p. 161). This testimony demonstrates that Mr. Gollin's method of analyzing whether the payments received by the Defendants were made in the ordinary course of business is unreliable.

In addition to the problems raised by Mr. Gollin, various other indicators support the conclusion that his testimony and report are unreliable. The conclusions adopted by Mr. Gollin are incapable of being tested for potential error. Mr. Gollin testified that he chose what creditors to survey. (Gollin Depo. at p. 45). He has given no basis for his determination of which creditors should be surveyed. This problem is compounded by Mr. Gollin's anonymous

7

surveying of companies. (Gollin Depo. at p. 68). This practice prevents any meaningful review of the anecdotal data that was provided to him. Finally, Mr. Gollin stated that he threw away his drafts and personal notes regarding his report, again preventing any meaningful review of his analysis. (Gollin Depo. at p. 68).

InaCom has also failed to demonstrate that the procedure followed by Mr. Gollin is accepted in this field. To withstand the court's gatekeeper review, the expert must "employ[] in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho*, 526 U.S. at 152. InaCom has not shown that Mr. Gollin's analysis of data regarding practices in the industry in 2003 and 2004 is sufficient to meet this test for an analysis of whether payments were made in the ordinary course of business in 2000. Additionally, InaCom has not demonstrated that Mr. Gollin's use of the D & B reports and surveying techniques involve the "same level of intellectual rigor" that is employed in this field of expertise.

Other factors demonstrating the unreliability of Mr. Gollin's testimony and report include that he failed to analyze the industries separately, but rather averaged the performance of several industries. (Gollin Depo. at p. 45-6, 66-7, 70, 137). Mr. Gollin also failed to adjust the data to exclude receivables that were not based on the companies' sales in the relevant industry. (Gollin Depo. at p. 162). Nor did he weight the data regarding the companies to account for the difference in the amount of receivables owed to the various companies. (Gollin Depo. at. p. 124-5, 128). This gave the same weight to payments made to large companies like Dell and small companies like Tech Express. (Gollin Report at p. 9.) Additionally, Mr. Gollin admitted that he copied information verbatim from a report that he obtained from the internet. (Gollin Depo. at p. 56).

### (5) GOLLIN'S TESTIMONY IS NOT RELEVANT

InaCom has not, and cannot, demonstrate that the report and testimony of Mr. Gollin are sufficiently relevant to be permitted. Mr. Gollin stated in his deposition that his analysis is based on a review of industry performance, rather than industry standard. (Gollin Depo. at p. 67). However, the United States Bankruptcy Court for the District of Delaware recently found that "[t]he emerging legal view is that 11 U.S.C.S. § 574(c)(2)(C) requires objective proof that the disputed payments are 'ordinary' in relation to the prevailing standards in the creditor's industry." *Troisio v. E.B. Eddy Forest Prods. Ltd., (In re Global Tissue*, LLC.), 302 B.R. 808, 813 (2003). Therefore, the industry performance is not relevant to the determination of whether the payments were made in the ordinary course of business.

"An additional consideration under Rule 702 . . . is whether expert testimony proffered in the case is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." *Daubert*, 509 U.S. at 592 (quoting *United States v. Downing*, 753 F.2d 1224, 1242 (3rd Cir. 1985)). This consideration is a question of "fit." *Id.* Mr. Gollin testified that his analysis of the ordinary course of the industry was based in large part on data obtained from D & B. Despite the fact that the relevant preference period was in 2000, Mr. Gollin reviewed the data concerning the industries for the years 2003 and 2004. (Gollin Depo. at p. 86.)[5] He also indicated that he did not take into account bankruptcies of resellers that occurred in 2000. (Gollin Depo. at p. 154-5). An analysis of the ordinary course of the industry in 2003 and 2004, especially one not accounting for changes that may have occurred in the industry, has no bearing on the ordinary course of business during the preference period, March to June 2000. The report and testimony of Mr. Gollin do not adequately "fit" the issues to be determined in this case.

---

[5] Although Mr. Gollin claimed that D & B's 2000 report could not be obtained, such reports can be obtained from the library.

> "Fit" is not always obvious, and scientific validity for one purpose is not necessarily scientific validity for other, unrelated purposes. . . . The study of the phases of the moon, for example, may provide valid scientific [, technical, or other specialized] "knowledge" about whether a certain night was dark, and if darkness is a fact in issue, the knowledge will assist the trier of fact. However, (absent creditable grounds supporting such a link), evidence that the moon was full on a certain night will not assist the trier of fact in determining whether an individual was unusually likely to have behaved irrationally on that night.

*Daubert*, 509 U.S. at 591. Although Mr. Gollin's report and testimony could be relevant to a case regarding the ordinary course of business in 2003 and 2004, they have no bearing upon the Defendants' "ordinary course" defenses as it does not take into account any changes in the ordinary course of business that have taken place since 2000. In fact, Mr. Gollin conceded that there could have been a change in credit and collection practices in the industry between 2000 and 2004. (Gollin Depo. at p. 118, 154.) Since Mr. Gollin's testimony and report are irrelevant, both must be excluded.

## VI. CONCLUSION

For the reasons discussed above, Defendants respectfully request that the Court exclude the proffered testimony and expert report of Mr. Stuart Gollin because they are not sufficiently reliable and relevant to satisfy the standards of Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), as made applicable to non-scientific expert testimony by *Kumho Tire Company v. Carmichael*, 526 U.S. 137 (1999).

Respectfully submitted,

_Patricia P. McGonigle_ (with permission) /s/ _signature_
Patricia P. McGonigle
Seitz, Van Ogtrop & Green, P.A.
222 Delaware Avenue, Suite 1500
P.O. Box 68
Wilmington, Delaware 19899
Tel.: (302) 888-0600

and

Sabrina L. Streusand
G. James Landon
Texas State Bar No. 11701700
Hughes & Luce, L.L.P.
111 Congress Avenue, Suite 900
Austin, Texas 78701
Tel.: (512) 482-6800

Attorneys for Defendant
Dell Computer Corp.

_/s/ Thomas G. Macauley_ (with permission)
Thomas G. Macauley (ID No. 3411)
Zuckerman Spaeder LLP
919 Market Street, Suite 990
P.O. Box 1028
Wilmington, Delaware 19899-1028
Tel.: (302) 427-0400
Fax: (302) 427-8242

and

Jonathan P. Hersey
Sheppard, Mullin, Richter & Hampton, LLP
600 Anton Blvd., 18th Floor
Costa Mesa, California 92626
Tel.: (714) 513-5100

Attorneys for Defendant
Ingram Entertainment Inc.

_/s/ signature_
Thomas G. Whalen Jr. (No. 4034)
Stevens & Lee, P.C.
1105 North Market Street, 7th Floor
Wilmington, Delaware 19801
Tel: (302) 425-3307
Fax: (302) 654-5181

and

Culver V. Halliday
Emily L. Pagorski
Stoll, Keenon & Park, LLP
2650 AEGON Center
400 West Market Street
Louisville, Kentucky 40202-3377
Tel: (502) 568-9100
Fax: (502) 568-5700

Attorneys for Defendant
Lexmark International, Inc.

11