# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re ) | |
| ) | |
| INACOM CORP., *et al.*, ) | |
| ) | |
| Debtors. ) | |
| ) | |
| ———————————————— ) | |
| ) | |
| INACOM CORP., on behalf of all affiliated Debtors, ) | Civil Action No. 04-593 (GMS) |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| INGRAM ENTERTAINMENT INC., as successor ) | |
| in interest to NASHVILLE COMPUTER ) | |
| LIQUIDATORS, L.P., ) | |
| ) | |
| Defendant. ) | |
| ) | |

**DEFENDANT INGRAM ENTERTAINMENT INC.'S MOTION SEEKING
REMEDIES FOR PLAINTIFF INACOM CORPORATION'S
<u>LATE PRODUCTION OF CERTAIN DISCOVERY MATERIALS</u>**

TO:   HONORABLE GREGORY M. SLEET
       UNITED STATES DISTRICT JUDGE

Ingram Entertainment Inc. ("Ingram"), the defendant herein, as and for its Motion seeking remedies for Plaintiff Inacom Corporation's Late Production of Certain Discovery Materials, respectfully states as follows:

<u>FACTUAL BACKGROUND AND PROCEDURAL HISTORY</u>

1.   On various dates, as described herein in greater detail, Inacom Corporation ("Inacom") has provided documentation to Ingram, and other similarly situated defendants including Lexmark International, Inc. ("Lexmark"), Dell Computer Corporation, and Tech Data Corporation ("Tech Data") on a piecemeal basis in response to open discovery requests.

2. Notwithstanding the fact that Inacom's counsel represented at the time of each such piecemeal production that the materials had just been discovered by counsel, the late production of these discovery materials has worked a hardship to Ingram, and the other defendants.

3. Most recently, on or about August 9, 2005, Inacom's counsel produced a blacklined version of an unsigned asset purchase agreement between Inacom and an entity known as Compucom. This agreement contained information that Inacom may to use at trial in order suggest a probative fact. Due to the lateness of production of this Compucom agreement, Ingram, and the other defendants, have been deprived of the opportunity for their expert witnesses to consider the document in the formulation of the opinions underlying their expert witness reports. Ingram and the other defendants have also been deprived of the opportunity to examine fact witnesses before the close of the discovery period regarding this Compucom agreement.

4. On or about July 12 and 13, 2005, Ingram, Tech Data and Lexmark appeared at the offices of Inacom's counsel in Los Angeles for mediation before Honorable Roger Whelan, a retired United States Bankruptcy Judge. During the mediation, Inacom's counsel made reference to documents that had not been produced by Inacom during the course of discovery. The unproduced documents were identified in a July 13 email by Inacom's counsel as an "open AP register used by Compaq and Inacom to specifically identify the invoices assumed by Compaq under the 2/16/00 Asset Purchase Agreement." These documents were provided to defense counsel by Inacom's counsel within a few days of the mediation. However, Ingram and the other defendants were once again deprived of the opportunity to question fact witness prior to the expiration of the discovery period regarding the content of these documents.

5. On May 27, 2000 Inacom's expert witness, Bridge Associates LLC, issued a Response report to the expert witness report of Ingram's, and the other defendants' expert witnesses, Duff & Phelps LLC and Sasco Hill Advisors, Inc. In the Bridge Associates Response, it made reference to documents upon which the Response was predicated that had never previously been turned over by Inacom during the course of discovery.[1] More particularly, the Bridge Response financial documentation regarding the Inacom entity upon which Inacom's counsel will likely attempt to rely at time of trial. Once again, Ingram and the other defendants were prejudiced by Inacom's failure to have produced these materials in a timely fashion, as the discovery period for fact witnesses had already closed. Moreover, the defendants' expert witnesses were deprived of the opportunity to review these materials in the preparation of their own expert reports.

6. Due to the lateness of production of the foregoing evidence (the "Undisclosed Documents"), Ingram and the other defendants have been deprived, or substantially impaired, in their ability to prepare for trial.[2]

RELIEF REQUESTED AND REASONS THEREFOR

7. Ingram respectfully requests that the Court fashion a remedy that will mitigate the prejudice done to Ingram and the other defendants for Inacom's late production of documents and do substantial justice.

---

[1] The Undisclosed Documents are attached as appendices 1, 2, and 3, respectively, to Plaintiff's expert report and consist of: (1) a company internal YTD through April 22, 2000 Income Statement and Service Income Statement, (2) Company Internal April 2000 Consolidated, Service and Corporate Income, and (3) Company Internal April 2000 Consolidate Balance Sheet.

[2] Inacom's counsel had also failed to produce requested documentation regarding the financial condition of Inacom prior to the deposition of Thomas J. Fitzpatrick, Inacom's former chief financial officer on January 9, 2005, and Lazarus Krikorian, one of Inacom's former controllers, on January 7, 2005. In reply to requests by the defendants, Inacom ultimately agreed to produce Messrs. Fitzpatrick and Krikorian again for supplemental depositions on September 14 and 15, 2005.

8. Rule 37 of the Federal Rules of Civil Procedure (the "Rules") governs, in pertinent part, remedies for discovery infractions.

9. Rule 37(b) provides for the court's authority to sanction parties who do not comply with a discovery order. And, in the absence of a specific order pertaining to discovery, the court may impose sanctions or other remedies for misconduct in discovery under the court's inherent authority to manage its own affairs. Chambers v. NASCO, Inc., 501 U.S. 32, 43, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991) ("It has long been understood that certain implied powers must necessarily result to our Courts of justice from the nature of their institution, powers which cannot be dispensed within a Court because they are necessary to the exercise of all others.") (internal citations and quotations omitted); DLC Management Corp. v. Town of Hyde Park, 163 F.3d 124, 135-36 (2d Cir. 1998). Additionally, the Court may invoke the equitable authority conveyed by Congress from, among other sources, Section 105 of the United States Bankruptcy Code.

10. Rule 37(c)(1) states,

> A party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1), or to amend a prior response to discovery as required by Rule 26(e)(2), is not, unless such failure is harmless, permitted to use as evidence at a trial . . . any witness or information not so disclosed.

Fed.R.Civ.P. 37(c)(1).

11. In deciding whether to preclude evidence under Rule 37, courts in the Third Circuit consider five factors: (1) the prejudice or surprise to the party against whom the evidence is offered, (2) ability of the injured party to cure the prejudice, (3) likelihood of disruption of trial, (4) bad faith or willfulness involved in not complying with the disclosure rules, and (5) the importance of the evidence to the proffering party's case. Astrazeneca AB v. Mutual

Pharmaceutical Co., Inc., 278 F.Supp.2d 491, 504 (E.D. Pa. 2003).  Here, balancing these five factors weighs in favor of excluding the Undisclosed Documents and any related testimony.

12.    In Residential Funding Corporation v. DeGeorge Financial Corp., et al., 306 F.3d 99 (2d Cir. 2002), the United States Court of Appeals for the Second Circuit considered post-trial remedies to counter the prejudice suffered on account of late production of discovery materials. Therein, the DeGeorge court observed that the "culpable state of mind" factor for an adverse inference jury instruction may be satisfied by a showing of ordinary negligence on the part of the offending party, as opposed to a requirement of "gross negligence" or "bad faith." Id. at 101.

13.    Due to the lateness of production of documents by Inacom, Ingram and the other defendants have been so impaired that the lateness of production is the equivalent of non-production, at least in terms of preparation by the defendants for trial. As the DeGeorge court noted,

> Where, as here, the nature of the alleged breach of a discovery obligation is the non-production of evidence, a district court has broad discretion in fashioning an appropriate sanction, including the discretion to delay the start of a trial (at the expense of the party that breached its obligation), to declare a mistrial if a trial has already commenced, or to proceed to trial and give an adverse inference instruction.

Id. at 107, citing Reilly v. Natwest Markets Group, Inc., 181 F.3d 253, 267 (2d Cir.1999).

A.    Ingram Will Suffer Severe Prejudice If This Information Is Not Excluded.

14.    Ingram and the other defendants will be prejudiced if Inacom is permitted to use the Undisclosed Documents and related testimony at trial.  "Prejudice exists when the surprised party likely would have conducted discovery differently."  Globespanvirata, Inc. v. Texas Instruments, Inc., 2005 WL 1638136 at *2 (D.N.J. 2005) (attached as Exhibit A hereto). Prejudice is also found when a party is not given an opportunity to address new and complex

5

data and expert testimony. Astrazeneca, supra, 278 F.Supp.2d at 510. Indeed, a failure to disclose information is not harmless if the other side had no knowledge of the existence of the information. Gallup, Inc. v. Kenexa Corporation, 2003 WL 22097495 at *4 (E.D. Pa. 2003) (attached as Exhibit B hereto).

15. Here, Ingram will be severely prejudiced if the Undisclosed Documents are not excluded. Ingram had no knowledge of the existence of the Undisclosed Documents. Thus, Ingram suffered prejudice since its expert was unable to use or address the Undisclosed Documents in its report. It only adds insult to injury if Inacom is then allowed to criticize Ingram's report for failing to use the Undisclosed Documents. Even though Ingram's expert can explain that the Undisclosed Documents do not change the outcome of the report and that the only reason that the Undisclosed Documents were not addressed in the first place was because Inacom failed to produce them, a trier of fact may believe that Ingram's report is less reliable because it fails to refer to the Undisclosed Documents regardless of who is responsible for that failure.

16. In addition, Ingram and the other defendants will suffer prejudice since it does not know who created the Undisclosed Documents, whether they are authentic, the exact date on which they were created, etc. and Ingram has already taken the depositions of the persons who would know this information.

17. In fact, this situation is analogous to Gallup, supra, 2003 WL 22097495. In that case, Gallup prepared a damages report based on the general information provided by Kenexa. After completion of this report, Kenexa, for the first time, produced several relevant financial documents. Gallup moved to have the documents, as well as any testimony regarding the contents of the documents, excluded. Kenexa agreed that it would not introduce the documents.

The Court held that Kenexa was also was precluded from introducing any testimony on the documents at trial. The Court stated,

> Gallup prepared its own expert testimony based upon the more general information provided by Kenexa. Thus, because Gallup had no knowledge of the existence of this information, Kenexa's failure to disclose cannot be considered harmless. . . Gallup, in reliance on Kenexa's previous disclosures, has already spent substantial time and resources securing an expert report detailing its damages. ***Gallup will be prejudiced if Kenexa is allowed to rebut this damages report with information which was not previously disclosed to Gallup***.

Id. at *4 (emphasis added). Similarly, here, Ingram would be severely prejudiced if Inacom is allowed to rebut its expert report with information not previously produced.

    B.    <u>Because Of The Late Timing Of Disclosure Of The Undisclosed Documents, There Is Little Or No Ability To Cure The Prejudice.</u>

18.    Here, if Inacom is allow to use the Undisclosed Documents, there will be little or no chance of curing the prejudice to Ingram. If Inacom introduces such information, Ingram would need to re-open depositions and have its expert prepare a new report. Given that fact based discovery closed on March 31, 2005 and Ingram has already spent a substantial amount of time, money and effort in preparing for the upcoming trial on October 17, 2005, such action is not feasible. Thus, there is little or no chance for cure.

    C.    <u>There Is A Strong Likelihood Of Disruption Of Trial If The Undisclosed Documents And Related Testimony Are Admitted.</u>

19.    Moreover, since Ingram would need to re-take several depositions and prepare a new expert report if Inacom uses the Undisclosed Documents, there is a strong likely for disruption to the trial in this case which is set for October 17, 2005. In <u>Finch v. Hercules</u>, 1995 WL 785100 (D. Del. 1995) (attached as Exhibit C hereto), the plaintiff sought to add five new witnesses on the eve of trial. The court refused to allow the plaintiff to do so noting that the addition would force the plaintiff to take new depositions and would unfairly disrupt the

defendant's preparation for trial. Id. at 10. Likewise, here, Inacom should not be allowed to use the Undisclosed Documents at trial.

      a.   Inacom Exhibited Bad Faith By Failing To Previously Produce The Undisclosed Documents.

"[W]hen the non-disclosing party is specifically asked to provide exact information in its possession and fails to do so, it can be inferred that the party acted in bad faith." Globespanvirata, supra, 2005 WL 1638136 at *2. Here, Ingram asked for financial information from Inacom, including all balance sheets and income statements during the relevant time period. Thus, Ingram specifically asked for the Undisclosed Documents. Inacom, however, failed to produce these documents in discovery and instead waited until after Ingram produced its expert report to disclose their existence. Thus, Inacom acted in bad faith and this factor weighs in favor of exclusion.

      b.   The Undisclosed Documents Are Not Crucial To Inacom's Case.

Inacom will not be unduly prejudiced by exclusion of the Undisclosed Documents. In fact, Inacom's expert did not even use these documents in its opening report. Also, Inacom's rebuttal report does not rely solely on the Undisclosed Documents. Thus, this factor weighs in favor of exclusion.

CONCLUSION

Based on the foregoing, Ingram respectfully requests that the Court order that Inacom is precluded from introducing the Undisclosed Documents into evidence at trial and/or from presenting expert testimony at trial which criticizes Ingram's expert report for failing to use the information contained in the Undisclosed Documents. Inacom requests that the Court fashion a further remedy that does substantial justice, upholding the integrity of the adversarial process and avoiding unjust enrichment or a windfall to the Inacom for its conduct.

Dated: August 15, 2005
       Wilmington, Delaware

ZUCKERMAN SPAEDER LLP

/s/ Thomas G. Macauley
Thomas G. Macauley (ID No. 3411)
Elizabeth D. Power (ID No. 4135)
919 Market Street, Suite 990
P.O. Box 1028
Wilmington, Delaware 19899-1028
Tel.: (302) 427-0400
Fax: (302) 427-8242

-and-

Jonathan P. Hersey
(CA Bar No. 189240 - not admitted in Delaware)
Sheppard Mullin Richter & Hampton LLP
650 Town Center Drive, 4th Floor
Costa Mesa, CA 92626
Telephone: (714) 513-5100
Facsimile: (714) 513-5130

Attorneys for Defendant
INGRAM ENTERTAINMENT INC., as successor in interest to NASHVILLE COMPUTER LIQUIDATORS, L.P.