# EXHIBIT B

Westlaw.

Not Reported in F.Supp.2d                                                                                                                          Page 1
Not Reported in F.Supp.2d, 2003 WL 22097495 (E.D.Pa.)
**(Cite as: 2003 WL 22097495 (E.D.Pa.))**

H

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
E.D. Pennsylvania.
GALLUP, INC. d/b/a the Gallup Organization
v.
KENEXA CORPORATION
**No. Civ.A. 00-5523.**

May 28, 2003.

Arthur J. Schwab, Buchanan Ingersoll, Pittsburgh, PA, Marguerite S. Walsh, Littler Mendelson Prof Corp., Paul D. Weiner, Buchanan Ingersoll Prof Corp., Philadelphia, PA, for Plaintiff.

Jeffrey C. Wong, Terry D. Goldberg & Associates, Holland, PA, Paul Kennedy, Larry R. Wood, Jr., Pepper Hamilton, LLP, Thomas E. Zemaitis, Pepper, Hamilton & Scheetz, Philadelphia, PA, for Defendants.

*MEMORANDUM AND ORDER*

HUTTON, J.

***1** Presently before the Court is Plaintiff Gallup, Inc.'s Motion to Strike Belated Damage Model (Docket No. 64). This motion consists of two related motions. First, Gallup seeks an Order striking from the record a damages report filed by Defendant Kenexa Corporation. Second, Gallup seeks an Order precluding the trial testimony of Mr. Donald Volk, Chief Financial Officer of Kenexa. Each of these motions are premised on the notion that Kenexa's failure to produce in discovery information related to the revenues and costs of its employee survey business precludes Kenexa from introducing such evidence at trial. For the reasons stated below, Plaintiff's Motion is granted.

*I. BACKGROUND*

In this case, Gallup is suing its competitor, Kenexa, alleging that Kenexa copied several survey items from Gallup's primary employee survey product, the Q12. The parties enjoyed over two years of active discovery in this case, from January 2001 until March 2003. During the discovery period, Gallup repeatedly sought financial information from Kenexa regarding Kenexa's employee survey business. Gallup planned to use this information to calculate the damages caused by Kenexa's alleged copyright infringement. In response to Gallup's inquiries, Kenexa produced financial information for its Human Capital Management ("HCM") division, which is a larger unit within Kenexa that contains its employee survey business.

On three occasions, Kenexa clearly stated that it could not provide financial information for any unit smaller than its HCM division. First, in a letter dated January 4, 2002, Kenexa's counsel stated that the HCM data "represents the smallest segments into which Kenexa's financial data was divided during this period, and [Kenexa has] no feasible way of breaking it down further to cover only the employee survey portion of Kenexa's business." *See* Pl.'s Mem. at Ex. 7, p. 2. Second, on March 11, 2002, Kenexa's counsel reiterated his earlier statement that Kenexa could not provide financial data specific to its employee survey business. Third, in a June 21, 2002, e-mail, Kenexa's counsel stated that because "the revenues and expenses for the employee engagement survey business are not separately maintained, there is no person at Kenexa who has that information and there are no documents in which it is compiled." *See* Pl.'s Mem. at Ex. 10. In reliance on Kenexa's representations, Gallup's damages expert, Mr. Craig T. Elson, used the financial information from Kenexa's HCM division to prepare his damages report, which was filed on June 28, 2002. *See* Pl.'s Mem. at Ex. 12 (filed under seal).

Subsequent to the filing of Gallup's damages report, Kenexa produced three pieces of evidence regarding the revenues and costs of its employee survey business. First, on March 7, 2003, Kenexa produced a document containing two charts regarding its employee survey business. *See* Pl.'s Mem. at Ex. 13 (filed under seal). The first chart lists the revenues and costs associated with each customer that purchased employee survey services from Kenexa from November 2000 through January 2003. The second chart contains a monthly breakdown of revenues and expenses for the smaller business units within Kenexa's HCM division. Second, Kenexa produced an updated version of these charts on March 25, 2003. *See* Pl.'s Supp. Mem. at Ex. 13 (filed

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 22097495 (E.D.Pa.)
**(Cite as: 2003 WL 22097495 (E.D.Pa.))**

Page 2

under seal). Third, in its Pretrial Memorandum, dated March 24, 2003, Kenexa lists Mr. Donald Volk as witness who "will testify as to the financial aspects of Kenexa's survey business, including revenues, costs and margins." *See* Def.'s Pre-Trial Mem. at 7.

**\*2** In the instant motion, Gallup seeks an order: (1) precluding Kenexa from introducing the financial charts produced by Kenexa on March 7, 2003, and March 25, 2003; and (2) precluding Mr. Volk from testifying at trial. [FN1] *See* Pl.'s Reply Mem. at 9-10. Gallup argues that it is unfairly prejudiced by Kenexa's failure to disclose this evidence until this late date. In response, Kenexa agrees not to introduce the financial charts into evidence, but opposes Gallup's motion to preclude Mr. Volk's testimony.

> FN1. Rather than file a separate motion, Gallup included its motion to exclude Mr. Volk's testimony in its supplemental memorandum of law supporting its motion to strike Kenexa's financial charts (Docket No. 69).

II. *LEGAL STANDARD*

Federal Rule of Civil Procedure 37(c)(1) provides for the exclusion of evidence that should have been disclosed pursuant to Rules 26(a) and 26(e) unless: (1) the non-disclosing party provides substantial justification for its failure to disclose; or (2) the failure to disclose is harmless. Fed.R.Civ.P. 37(c)(1). The burden of proving substantial justification or harmlessness lies with the non-producing party. Tolerico v. Home Depot, 205 F.R.D. 169, 175 (M.D.Pa.2002) (citing Stallworth v. E-Z Serve Convenience Stores, 199 F.R.D. 366, 368 (M.D.Ala.2001)).

"Substantial justification" for these purposes "has been regarded as 'justification to a degree that could satisfy a reasonable person that parties could differ as to whether the party was required to comply with the disclosure request.' " *Id.* (quoting *United States v. Dentsply Int'l, Inc.,* No. Civ.A. 99-5, 2000 WL 654378, at \*7 (D.Del. May 10, 2000)). If there is a genuine dispute regarding the non-producing party's compliance, then substantial justification is satisfied. Nguyen v. IBP, Inc., 162 F.R.D. 675, 680 (D.Kan.1995). A party's non-compliance is "harmless" if it is an honest mistake, coupled with the other party's knowledge of the material that was not produced. Tolerico, 205 F.R.D. at 176.

The Third Circuit has noted that the exclusion of evidence is "an 'extreme' sanction, not normally to be imposed absent a showing of willful deception or 'flagrant disregard' of a court order by the proponent of the evidence." Meyers v. Pennypack Woods Home Ownership Ass'n, 559 F.2d 894, 905 (3d Cir.1977), *overruled on other grounds,* 777 F.2d 113 (3d Cir.1985) (quoting *Dudley v. South Jersey Metal, Inc.,* 555 f.2d 96, 99 (3d Cir.1977)). Accordingly, courts in this circuit must apply an additional test before the evidence may be excluded. *See, e.g.,* Tolerico, 205 F.R.D. at 176-77; *ABB Air Preheater, Inc. v. Regenerative Envtl. Equip. Co.,* 167 F.R.D. 668, 672 (D.N.J.1996); Kotes v. Super Fresh Food Markets, Inc., 157 F.R.D. 18, 20 (E.D.Pa.1994). Under *Pennypack,* a district court must weigh the following four factors before excluding any evidence: (1) the prejudice or surprise of the party against whom the evidence would be admitted; (2) the ability of the party to cure that prejudice; (3) the extent to which allowing the evidence would disrupt the orderly and efficient trial of the case or other cases in the court; and (4) bad faith or willfulness in failing to comply with a court order or discovery obligation. 559 F.2d at 904.

III. *DISCUSSION*

A. *Motion to Strike*

**\*3** Kenexa does not contest Gallup's motion as to the financial charts disclosed by Kenexa on March 7, 2003 and March 25, 2003. Accordingly, Gallup's motion is granted as to these documents. [FN2] Kenexa, however, opposes Gallup's motion to exclude Mr. Volk's testimony. Applying the tests described above to Mr. Volk's proposed testimony, the Court finds that Kenexa's failure to produce this evidence during discovery precludes Kenexa from introducing the evidence at trial.

> FN2. Although Kenexa does not contest Gallup's motion as to these financial reports, Kenexa states that it "reserves [the] right to offer [these reports] in evidence in the event that Gallup opens the door to its admission at trial." *See* Def.'s Resp. at n.1. Gallup contests Kenexa's attempt to conditionally withdraw this evidence. The Court, however, need not address such arguments at this stage of the litigation. At this time, it is sufficient that the Court enter an order precluding the introduction of these reports at trial. Any arguments that Gallup somehow "opened the door" to their admission are best addressed in the context of the trial itself.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                          Page 3
Not Reported in F.Supp.2d, 2003 WL 22097495 (E.D.Pa.)
**(Cite as: 2003 WL 22097495 (E.D.Pa.))**

First, because there is no genuine dispute regarding Kenexa's compliance with Rules 26(a) and (e), its failure to produce this evidence is not substantially justified. Under Rule 26(a)(1), a party must, without waiting for a discovery request from the opposing party, provide, *inter alia,* the name and contact information of "each individual likely to have discoverable information that the disclosing party may use to support its claims or defenses, unless solely for impeachment...." Fed.R.Civ.P. 26(a)(1). Additionally, Rule 26(e)(1) imposes a duty upon each party "to supplement at appropriate intervals its disclosures under [Rule 26(a)] if the party learns that in some material respect the information disclosed is incomplete or incorrect and if the additional or corrective information has not otherwise been made known ... [during discovery or in writing]." Fed.R.Civ.P. 26(e)(1).

It is undisputed that Kenexa did not specifically disclose Mr. Volk's identity in its initial disclosures. *See* Pl.'s Supp. Mem. at Ex. 18. Thus, to satisfy the "substantial justification" prong of this test, Kenexa must demonstrate that there is a genuine dispute regarding whether it was under a duty to supplement its disclosures, pursuant to Rule 26(e), as to indicate that Mr. Volk was a potential witness.

Kenexa argues that it did not violate this duty to supplement because Gallup knew or should have known of Mr. Volk's potential testimony by April 4, 2001, approximately two years before the close of discovery. *See* Def.'s Mem. at 6. Kenexa points to two items disclosed during discovery that, in its view, should have alerted Gallup to Mr. Volk's proposed testimony. *Id.* at 2-3. First, Mr. Volk is identified as Kenexa's CFO in Kenexa's S-1 Registration Statement, dated January 2001. *Id.* at 3. Second, during his April 4, 2001 deposition, Kenexa's Executive Vice President, William Erickson, testified that Mr. Volk was in charge of generating all financial reports for Kenexa. *Id.* at 2-3. It follows, Kenexa argues, that Mr. Volk's identity was adequately disclosed during discovery such that Kenexa was not under a duty to file a separate supplemental disclosure listing Mr. Volk as a possible witness. *Id*. at 6.

The Court finds that Kenexa has not provided a substantial justification for its failure to disclose Mr. Volk's status as a witness. As noted above, substantial justification exists when there is a genuine dispute regarding a party's compliance. Nguyen, 162 F.R.D. at 680. In this case, Kenexa repeatedly told Gallup that the revenue and cost information did not exist and that *no person* at Kenexa could provide such information. Two passing references to Mr. Volk's role at Kenexa, in the face of Kenexa's repeated denials that such revenue and cost information existed at all, is insufficient to create a genuine dispute over Kenexa's compliance. [FN3]

> FN3. A comparison with an earlier order issued by this Court demonstrates the lack of substantial justification in the instant discovery dispute. On April 3, 2003, this Court issued an Order denying Gallup's emergency motion for a protective order. In that motion, Gallup sought to preclude the testimony of three of Kenexa's previously unidentified witnesses. The Court found that there was a genuine dispute over Kenexa's compliance with Gallup's discovery request. In response to Gallup's discovery requests, Kenexa provided a list of all its customers and supplemented that list on several occasions. Each of the three disputed witnesses was an employee of a Kenexa customer. When Kenexa sought to depose individual employees at those companies, Gallup argued that these witnesses were not adequately disclosed. In that situation, Kenexa had a substantial justification because it was unclear whether Kenexa, having disclosed the names of its customers, also had to disclose the names of the individual witnesses at those companies.
> In contrast, in the instant motion, Kenexa, in response to several inquiries from Gallup, flatly denied that anyone at Kenexa could provide the financial information requested. Now, after the close of discovery, Kenexa seeks to offer testimony regarding this same information. Unlike the dispute over the Kenexa customer testimony described above, this is not a case where Kenexa arguably complied with a Gallup discovery request. Thus, a substantial justification does not exist.

**\*4** Second, Kenexa's failure to disclose Mr. Volk's proposed testimony is not harmless. As noted above, to be considered harmless, the party's misconduct must involve an honest mistake, coupled with the other party's knowledge of the undisclosed material. *Tolerico,* 205 F.R.D. at 176. In this case, Gallup was unaware of the existence of the financial information in question. On several occasions, Kenexa denied that it could provide revenue and cost information for its employee survey business. In reliance on these

Not Reported in F.Supp.2d  
Not Reported in F.Supp.2d, 2003 WL 22097495 (E.D.Pa.)  
**(Cite as: 2003 WL 22097495 (E.D.Pa.))**

Page 4

disclosures, Gallup prepared its own expert testimony based upon the more general information provided by Kenexa. Thus, because Gallup had no knowledge of the existence of this information, Kenexa's failure to disclose cannot be considered harmless.

Third, the Court finds that the *Pennypack* factors weigh in favor of excluding Mr. Volk's testimony. Regarding the first factor, Gallup will be prejudiced if Mr. Volk is allowed to testify about the revenues and costs of Kenexa's employee survey business. Gallup has not had an opportunity to depose Mr. Volk to ascertain exactly what knowledge he possesses regarding the finances of Kenexa's employee survey business. Moreover, Gallup, in reliance on Kenexa's previous disclosures, has already spent substantial time and resources securing an expert report detailing its damages. Gallup will be prejudiced if Kenexa is allowed to rebut this damages report with information which was not previously disclosed to Gallup. Thus, the first factor militates in favor of exclusion.

Second, Gallup does not have an opportunity to cure the prejudice resulting from Kenexa's non-disclosures. Gallup has already produced its expert report on damages. Moreover, Gallup prepared for trial using only the more general information concerning Kenexa's HCM division. At this late date, Gallup cannot adequately incorporate this new financial information into its case. Accordingly, this factor favors excluding Mr. Volk's testimony regarding the revenues and costs of Kenexa's employee survey business.

Third, allowing this testimony will disrupt the orderly trial of this case. Discovery closed in this case on March 10, 2003. All disclosure of expert testimony was due on February 10, 2003. Moreover, this case has entered the trial pool. Allowing Mr. Volk to testify regarding the financial aspects of Kenexa's employee survey business would require issuing a new scheduling order and yet another round of discovery. Thus, this factor favors exclusion.

Fourth, there is some evidence that Kenexa willfully failed to disclose this evidence. As noted above, on at least three occasions, Kenexa stated that it did not possess detailed financial information regarding its employee survey business. It also stated that "no person at Kenexa" could provide such information. *See* Pl.'s Mem. at Ex. 10. Despite these repeated denials, Kenexa now seeks to offer testimony regarding these same financial issues. Kenexa offers no explanation for its contradictory statements. Accordingly, this factor also militates in favor of exclusion.

**\*5** The balance of the *Pennypack* factors weigh in favor of excluding Mr. Volk's proposed testimony regarding the financial details of Kenexa's employee survey business. Gallup would suffer incurable prejudice if the testimony is allowed. Moreover, it appears that Kenexa willfully denied the existence of the financial information that is the subject of Mr. Volk's testimony. Finally, if the testimony is allowed, the trial of this case would be disrupted.

B. *Scope of the Exclusion*

Due to the extreme nature of an exclusion sanction, the exclusion should only be as broad as is necessary to cure the prejudice inflicted by the disobedient party. *Pennypack,* 559 F.2d at 905 (noting trial courts can impose "reasonable sanctions"). In this case, Gallup was prejudiced by Kenexa's repeated denials that it could produce financial information regarding its employee survey business. In preparing for trial, Gallup relied on Kenexa's more general financial discloses, without the benefit of the specific financial information that Kenexa now seeks to offer at trial. Accordingly, Mr. Volk is precluded from testifying about the specific costs and revenues associated with Kenexa's employee survey business.

An appropriate Order follows.

*ORDER*

AND NOW, this 28th day of May, 2003, upon consideration of Plaintiff Gallup, Inc.'s Motion to Strike (Docket No. 64), IT IS HEREBY ORDERED that Plaintiff's Motion is GRANTED as follows:

(1) Defendant Kenexa Corporation is PRECLUDED from referring at trial to the reports produced on March 7, 2003, and March 25, 2003, regarding the revenues and costs associated with Defendant Kenexa Corporation's employee survey business; AND

(2) Defendant Kenexa Corporation is PRECLUDED from offering at trial the testimony of Mr. Donald Volk to the extent such testimony relates to the specific costs and revenues associated with Defendant Kenexa's Corporation's employee survey business.

Not Reported in F.Supp.2d, 2003 WL 22097495 (E.D.Pa.)

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                   Page 5
Not Reported in F.Supp.2d, 2003 WL 22097495 (E.D.Pa.)
**(Cite as: 2003 WL 22097495 (E.D.Pa.))**

**Motions, Pleadings and Filings (Back to top)**

• 2:00cv05523 (Docket) (Oct. 31, 2000)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.