IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

In re INACOM CORP., *et al.*,

| | |
|---|---|
| INACOM CORP., on behalf of all affiliated Debtors,<br><br>       Plaintiff,<br>v.<br><br>INGRAM ENTERTAINMENT, INC., as successor in interest to NASHVILLE COMPUTER LIQUIDATORS,<br><br>       Defendant. | Civil Action No. 04-593 GMS<br><br>Adversary Case No.  02-3960 (PJW)<br>Bankruptcy Case No. 00-2426 (PJW)<br><br>[MOTION IN LIMINE NO. 3 OF 4] |

**PLAINTIFF'S MOTION IN LIMINE TO EXCLUDE THE
EXPERT TESTIMONY OF STEVEN GADSEY AT TIME OF TRIAL**

Plaintiff Inacom Corp. ("Plaintiff") and files this Motion in Limine #3 ("Motion") to exclude the expert testimony of Steven Gadsey under Federal Rules of Evidence 702. Mr. Gadsey is admittedly without any knowledge of the specific terms constituting the "industry standards" under 11 U.S.C. 547(c)(2)(C). Without personal or independent knowledge, there is no basis for any evidentiary relevance, value or reliability of any opinions he may offer, all of which would be based on speculation and conjecture.

**PRELIMINARY STATEMENT AND PERTINENT FACTS**

1.      In this action, Plaintiff seeks, under 11 U.S.C. § 547, to recover a preferential transfers made by the Debtor within 90 days prior to bankruptcy. In connection with its intended ordinary course of business defense, Defendant Ingram Entertainment, Inc.(formerly Nashville Computer Liquidators or NCL) ("Defendant") designated Steven Gadsey as an

"expert" in addition to his role as a percipient witness. Mr. Gadsey is Defendant's Vice President of Finance. Defendant served an expert witness disclosure as well, pursuant to Fed. R. Civ. P. 26, wherein it designated Mr. Gadsey as an expert on "industry standards". (See Ingram's Expert Disclosure, attached hereto as Exhibit A). However, at his deposition, Mr. Gadsey testified that he has no knowledge of what constitutes industry payment terms, industry credit allowance or business terms of any competitor of Defendant. Mr. Gadsey does not, under Federal Rules of Evidence 702, qualify to provide expert testimony on the issues presented by Bankruptcy Code §547(c)(2)(C).

       2.     Mr. Gadsey and counsel confirmed at his deposition that his knowledge was <u>limited</u> to Defendant's company terms. (Gadsey Deposition, hereinafter "Depo", p.102-103, lns 15-14) The witness identified the competitors of Defendant as Matrix, Logicare, BLT and Tech Express (collectively, the "Competitors"). (Gadsey Deposition, hereinafter "Depo", p.58, lines 11-23, see Exhibit B.) For any of the aforementioned Competitors, Mr. Gadsey was unaware of what constituted their terms of payment. (Gadsey Depo., p.105, lines 5-8;). For any of the aforementioned Competitors of Defendant mentioned above, Mr. Gadsey had no appreciation if Competitors utilized "pay early" discounts. (Gadsey Depo, p.105, lines 9-12,).

       3.     Mr. Gadsey was unaware whether or not any Competitors in the industry varied their payment terms based on the size of the customer. (Gadsey Depo, p.105, lines 13-17). Mr. Gadsey was unaware if the "industry standards" as evidenced by Competitors' payment terms were any more stringent or lenient than those of Defendant. (Depo, p.105, lines 18-23). Mr. Gadsey had no knowledge and did not perform any study or research to determine when Competitors were paid off or if they were paid in accordance with their invoice terms. (Depo,

p.111, lines 10-15 ). In fact, Mr. Gadsey was not aware of the average period of time to elapse between the dates of issue of invoice and payment. (Depo, p.26, line 2-10; p.25, lines 13-22).

4. Mr. Gadsey did not set credit allowances for the Competitors of Ingram and their purchases. (Depo, p.118, lines 3-22). Similarly he did not know if Competitors set payment terms uniformly for all customers, or varied them based on factors such as credit worthiness . (Depo, Gadsey p.118, lines 3-22). Mr Gadsy knew of the terms of only one competitor which was not based on personal knowledge or research, but on the reading of an expert report minutes before his deposition. (Depo, Gadsey p.106-107, lines 20-5)

## ARGUMENT

5. In the Third Circuit, motions in limine, under Rule 104(a), occupy a role of importance in determining the reliability of expert testimony under Rule 702. *In re Padillas v. Stork-Gamco, Inc.*, 186 F.3d. 412, 417 (3d Cir. 1999)[1]. The burden of establishing the admissibility of evidence is on the proponent of the evidence. *Padillas*, supra at 417-418. In this case, Defendant must carry that burden by establishing admissibility of the expert opinion by a preponderance of the evidence. *Id.* citing to *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S., 579, 590 113 S.Ct. 2786 (1993). In all cases where expert testimony is offered, the trial judge must find that the testimony is "properly grounded, well-reasoned and not speculative before it can be admitted." See FRE 702, Adv. Comm. Notes, 2000. *See Stecyk v. Dell Helicopter Textron, Inc.*, 295 F.3d. 408, 415 fn.3 (3d Cir. 2002).

6. To establish an "ordinary course of business" defense under § 547(c)(2),

---

[1] Federal Rules of Evidence 104(a) sets forth "preliminary questions concerning the qualification of a person to be a witness, the existence of a privilege, or the admissibility of evidence shall be determined by the Court, subject to the provisions of subdivision (b).

Defendant must meet its burden on all three elements of the test. 11 U.S.C. § 547(g). The third prong of the test, subsection 547(c)(2)(C), referred to as the "objective test," requires a showing by the defendant that the transfer conforms to practices within the parties' industry. The "objective" test relates to the billing practices generally within the relevant industry. Id. citing to *Fiber Lite Corp. v. Molded Acoustical Prod. (In re Molded Acoustical Prod.)* 18 F.3d. 217, 224 (3d Cir. 1994), the Third Circuit's seminal case on the issue. Mr. Gadsey's expert testimony should be excluded as he has no basis for expert testimony as to "ordinary business terms."

7.    Under §547(c)(2)(C), the proper focus is on the ordinary business terms within the creditors' industry, not the debtors. *In re Sacred Heart Hospital*, 200 B.R. 114, 118-119 (E.D. Pa. 1996). Although a creditor need not establish the existence of a single, uniform set of business practices, "a preference defendant must introduce evidence of its competitors' accounts receivable and collection practices and also of the actual payment practices of its competitors' customers." *In re Schwinn Bicycle Company*, 205 B.R. 557, 573 (Bankr. M.D. Ill. 1997). The court must first determine the broad range of terms on which businesses similar in some general way to the creditor provide credit to businesses comparable to the debtor on some level. *In re J. Allen Steel Company*, 323 B.R. 425, 437. (Bankr. W.D. Pa. 2005). "The creditor's entire industry must be analyzed in the course of a successful § 547(c)(2)(C) showing and a lack of specific evidence regarding a competitors' terms is fatal. *In re Sacred Heart Hospital*, supra, citing to *In re Midway Airlines, Inc.*, 69 F.3d 792, 796 (7th Cir. 1995)[2]. Accord, *In re Hechinger Investment Company of Delaware*, 298 B.R. 240, 242 (Bankr. D.Del. 2003); *In*

---

[2] *In re Midway Airlines, Inc.* highlighted the importance of objective dichotomy in 547(c)(2)(C). While 547(c)(2)(B) can be satisfied through proof of the parties own dealings, 547(c)(2)(C) requires proof beyond what is normal between the debtor and the creditor: The creditor must show that the disputed payment was made according to terms that are ordinary when compared to those employed by other firms in the same industry. 547(c)(2)(C) requires reference to some external datum. 69 F.3d 792, 798.

*re APS Holding Corporation*, 282 B.R. 795, 804 (Bankr. D.Del. 2002).

    8. In *In re Sacred Heart Hospital*, supra, the defendant's employee "expert" gave vague approximations of payment terms by other hospitals, as opposed to statistical analysis. The court ruled that the evidence presented by defendant was unsupported by specific data, and consisted merely of a broad estimate. Id., at 117. On that basis, the testimony of the employee expert was excluded. *See also, J. Allen Steel, supra*, at 438-439.

    9. Here, Mr. Gadsey can offer no insight in to objective payment terms in the industry. He has no basis to articulate the Competitors' payment terms as he admits he does not know them. He did not perform any research, or consult any periodical or business journal, that would allow him to articulate the applicable industry standards. He did not perform any analysis of Defendant's Competitors to determine what percentage of customers in this industry made payments late, and/or to what degree a payment varied from invoice terms such that it could be categorized a "late payment." He is unaware if the "industry standards," as evidenced by Competitors, was any more stringent or lenient than those set by Defendant. While Mr. Gadsey may be knowledgeable about the payment terms set by Defendant, he certainly cannot educate the trier of fact as to what constitutes the "industry standards."

## CONCLUSION

Plaintiff requests an Order that Mr. Gadsey be precluded from testifying as to:

    1. Any opinion, comment, or statement as to what constitutes industry terms in the sale and resale of computers or printers by any business entity other than Defendant.

    2. What constitutes ordinary business terms for payment of invoices in this adversary under 11 U.S.C. 547(c)(2)(C).

Dated: August 15, 2005

PACHULSKI, STANG, ZIEHL, YOUNG, JONES & WEINTRAUB P.C.

/s/ Laura Davis Jones
Laura Davis Jones (DE Bar No. 2436)
Sandra G. McLamb (DE Bar No. 4283)
919 North Market Street, 16th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400

and

Andrew W. Caine (CA Bar No. 110345)
Jeffrey P. Nolan (CA Bar No. 158923)
10100 Santa Monica Blvd.
11th Floor
Los Angeles, California 90067-4100
Telephone: (310) 277-6910
Facsimile: (310) 201-0760

Counsel for Debtor and Debtor in Possession
INACOM CORP