# EXHIBIT B

Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

INACOM CORP., on behalf of  )
All affiliated Debtors,     )
                            )
         Plaintiff,         )
                            )   Civil Action
v.                          )   No. 04-593GMS
                            )
INGRAM ENTERTAINMENT, INC., )   Adversary Case
Successor in interest to    )   No. 02-03960PIW
NASHVILLE COMPUTER          )
LIQUIDATORS,                )
                            )
_____Defendant._____)

DRAFT

DEPOSITION OF STEVEN GADSEY

August 3, 2005

Taken on Behalf of the Plaintiff

---

APPEARANCES:

For the Plaintiff:   Hon. Jeffrey P. Nolan
                     10100 Santa Monica Blvd.
                     11th Floor
                     Los Angeles, CA  90067

For the Defendant:   Hon. Jonathan P. Hersey
                     650 Town Center Drive
                     4th Floor
                     Costa Mesa, CA  92626

---

MORGAN REPORTING SERVICE
3352 Parsons Street
Murfreesboro, TN  37127-6427
(615) 890-7317
Reported by: Marilyn Gorski, CCR #0174

The deposition of STEVEN L. GADSEY, taken on behalf of the Plaintiff and taken pursuant to notice on August 3, 2005, beginning at approximately 10:00 a.m., at Two Ingram Blvd., Lavergne, Tennessee, pursuant to stipulations of counsel.

S T I P U L A T I O N S

It is agreed that the court reporter, being a notary public for the State of Tennessee, may swear the deponent, take the deposition on the Stenograph shorthand machine and afterwards reduce the same to typewriting when it may be used for all purposes provided by the Federal Rules of Civil Procedure governing depositions.

It is further agreed that the reading of the completed deposition by the deponent and the signature of the deponent are not waived.

Page 89

1    I wanted to just go through these categories of
2    examination and ask you if you were the person
3    most knowledgeable in these topics.
4        A.    Yes.
5             MR. HERSEY:  Interpose on
6        objection.  Calls for a legal conclusion.
7        You can ask him if he's the most
8        knowledgeable person here, but I don't
9        agree that's the legal standard we're
10       required to comply with.
11   BY MR. NOLAN:
12       Q.    Category Number 1 -- let me ask it
13   this way:  Do you have knowledge of any of the
14   communications between Inacom and Compaq with
15   respect to Compaq's purchase of the
16   distribution division of Inacom?
17       A.    No.
18       Q.    If you would, look at the second
19   category.  Did you or do you have any knowledge
20   concerning the terms of the asset sale between
21   Inacom and Compaq that took place in February
22   of 2000?
23       A.    No.
24       Q.    If you would, look at Category 3
25   for me.  As part of learning of this

1           MR. HERSEY:  It starts at 512.
2       This one has the check date on it.
3       A.      If you look at the first invoice,
4   3081, check date is August 10, 1999.  The
5   deposit date is August 23rd.  So even with a
6   mail date of two to three business days --
7   again, we deposit the checks as soon as we
8   receive them.  So that check was probably held
9   ten days, nine or ten days, would be my
10  understanding.
11      Q.      And did anyone at Inacom ever
12  explain to you what a held check was at Inacom?
13      A.      No.
14      Q.      Did you ever learn from anyone else
15  at Nashville that they had had a discussion
16  with someone at Inacom who described what a
17  held check was?
18      A.      No.
19      Q.      Would you have any knowledge
20  concerning any communications between Inacom
21  and Nashville Liquidators concerning held
22  checks or outstanding accounts receivable?
23      A.      No.
24      Q.      I think that's Category 7 on the
25  exhibit.

```
                                                              Page 97
 1        A.    Okay.
 2        Q.    So the answer to the question is,
 3  you don't have any knowledge concerning
 4  Category 7?
 5        A.    I had no communications.  The sales
 6  rep may have had some communications.
 7        Q.    But you don't have any knowledge on
 8  the Ingram side from talking with that sales
 9  rep?
10        A.    No.
11        Q.    I think we just talked about
12  Category 4.  You do have knowledge concerning
13  the handling of payments from Inacom from
14  January 1, 1999 to June 16, 2000?
15        A.    Are we on 4 or 8?
16        Q.    We're on 4.
17        A.    Could you repeat the question,
18  please?
19        Q.    Sure.  For Category 4, you do have
20  information concerning Category 4; correct?
21        A.    Yes.
22        Q.    That was your testimony concerning
23  the receipt of payments and the receptionist
24  logging it in?
25        A.    Yes.
```

Page 98

1    Q.    Looking at Category 6, are you the
2 person most knowledgeable at Ingram with
3 respect to Nashville's procedures regarding
4 accounts receivable collections?
5    A.    Yes.
6    Q.    And you've testified a little bit
7 this morning about accounts receivable and how
8 that decision to escalate was made by -- you
9 can correct me if I'm wrong -- the management
10 as well as the salesperson on the account?
11    A.    Yes.
12    Q.    Do you have anything else to add
13 beside what you've testified to this morning?
14         MR. HERSEY:  Objection.  Vague and
15    am ambiguous.
16    A.    No.
17    Q.    With respect to Category 8, if you
18 would look at that, please, is it a fair
19 statement, based on your testimony here earlier
20 today, that you don't have any direct knowledge
21 concerning contact with Inacom to collect on
22 accounts receivables?
23    A.    Yes.
24    Q.    Is it a fair statement that you are
25 the person most knowledgeable at Nashville

Page 99

1   Liquidators concerning the receipt of payments
2   from Inacom?
3        A.    Yes.
4        Q.    Is it an accurate statement that,
5   with regard to Category 10, you're the most
6   knowledgeable person at Nashville Liquidators
7   or Ingram Entertainment concerning the standard
8   credit terms issued by Nashville Liquidators in
9   the 1998 to 2000 time frame?
10       A.    Well, the credit terms were
11  established by the sales reps, the president,
12  and the management of Ingram Entertainment.
13       Q.    So you might have knowledge -- if I
14  understood your testimony earlier today, you
15  might have knowledge as to what those terms
16  are, but you didn't establish them?
17       A.    That's correct.
18       Q.    And to the extent that you knew
19  about those terms, it would be from setting up
20  an account in the accounting department?
21       A.    Yes.
22       Q.    I'm going to show you a document
23  now that will be marked Exhibit 2.  And I'm
24  going to ask you if you've ever seen that
25  document before.