IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re ) | |
| ) | |
| INACOM CORP., *et al.*, ) | |
| Debtors. ) | |
| ) | |
| ) | |
| INACOM CORP., on behalf of all affiliated Debtors, ) | Civil Action No. 04-593 (GMS) |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| INGRAM ENTERTAINMENT INC., as successor ) | |
| in interest to NASHVILLE COMPUTER ) | |
| LIQUIDATORS, L.P., ) | |
| ) | |
| Defendant. ) | |
| ) | |

**DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE
NO. 3 TO EXCLUDE EXPERT TESTIMONY OF STEVEN GADSEY**

Defendant Ingram Entertainment Inc. ("Ingram") respectfully submits this

Response in opposition to plaintiff Inacom's Motion in Limine No. 3 (the "Motion") to exclude

the expert testimony of Steven Gadsey.

### I.     INTRODUCTION

At trial, and in support of its affirmative defense pursuant to 11 U.S.C.

§ 547(c)(2)(C), Ingram intends to offer the expert testimony of its long-time employee and Vice

President of Finance, Steven Gadsey, concerning the "ordinary business terms" in the computer

hardware product distribution industry.  Plaintiff's Motion to exclude his testimony is based on

an incorrect application of the law, which not only permits, but actually favors testimony about

ordinary business terms from the creditor's own employees.  And contrary to Plaintiff's

assertion, Mr. Gadsey is well-qualified to offer such testimony, particularly in conjunction with

the other documentary and testimonial evidence that Ingram will offer at the time of trial.  The

weight to be afforded Mr. Gadsey's testimony should be left to the trier of fact. Accordingly, the Motion should be denied.

## II.     STATEMENT OF FACTS

Mr. Gadsey began his employment with Ingram in 1984. *See* Deposition Transcript of Steven Gadsey ("Gadsey Depo.") at 24:10-12, attached as Exhibit "A" to Declaration of Jonathan P. Hersey in Support of Opposition. Mr. Gadsey began his employment with Ingram as a Senior Accountant, and after a few years, he was promoted to Sales Cost Accounting Manager, and then Accounting Manager. *Id.* at 26:4-10 & 28:2-8. In 1992, he was again promoted to Assistant Controller, in which position he remained until 1998. His responsibilities as Assistant Controller included oversight of the company's billing department. *Id.* at 29:7-17. Like Inacom, Ingram's business from 1984 through 1998 included the distribution of computer hardware products. *Id.* at 25:21 – 26:23.

In 1999, Mr. Gadsey became Vice President of Finance for Nashville Computer Liquidators ("NCL"), a limited partnership of which Ingram was the general partner. *Id.* 33:9-16. NCL was in the business of selling refurbished computer hardware products to wholesale distributors. *Id.* at 34:24 – 36:25. As NCL's Vice President of Finance, Mr. Gadsey was responsible for NCL's accounts receivable and accounts payable departments *Id.* at 37:1-6. When NCL closed down its operations in April 2001, Mr. Gadsey returned to Ingram, where he has remained in his position as its Vice President of Finance. *Id.* at 40:2-23.

During the course of his more than two decades of employment with Ingram, and particularly during his two and a half years as Vice President of Finance with NCL, Mr. Gadsey obtained experience and knowledge of the terms of NCL's and Ingram's credit terms with their customers, as well as the identity and credit terms of some of NCL's and Ingram's competitors. *E.g., id.* at 80:8 – 81:8 & 84:22 – 85:25 & 99:7-21 (discussing NCL's payment terms to Inacom and other customers); *see also id.* at 104:104:19 – 105:1 & 106:12 – 107:2 (discussing knowledge of NCL's competitor Resilien/Logicare's credit terms as ranging from 15 to 60 days).

### III.    ARGUMENT

To prevail on its "ordinary course" defense, Ingram must prove that it incurred the disputed debts in the ordinary course of its business with Inacom; that it was ordinary as between the parties and in the industry examined as a whole. *In re Cherrydale Farms, Inc.*, 2001 WL 1820323, at *3 (Bankr. D. Del. Feb. 20, 2001) (Ex. A hereto). "Ordinary business terms" in the industry (under 11 U.S.C. § 547(c)(2)(C)) refers to the "range of terms that encompasses the practice in which firms similar in some general way to the creditor in question engage, and that only dealings so [unusual] as to fall outside that broad range should be deemed extraordinary and therefore outside the scope of subsection C." *In re Global Tissue, L.L.C.*, 302 B.R. 808, 813 (D. Del. 2003).

But the requirement to show that the disputed payments fall within the "ordinary business terms in the industry" does not imply that the creditor must prove the existence of some single, uniform set of industry-wide credit terms. *Fiber Lite Corp. v. Molded Acoustical Prods. (In re Molded Acoustical Prods.)*, 18 F.3d 217, 222 (3d Cir. 1994). This is especially true when there are a large number of participants in an industry, or when competitors may be reluctant, for business reasons, to openly disclose information about their credit practices. *Id.*

Rather when, as in this case where the debtor and creditor are in the same industry (computer hardware distribution), "evidence beyond the parties' own dealings is not necessary." *Global Tissue*, 302 B.R. at 813 (citing *Cherrydale Farms*). Thus, Mr. Gadsey's knowledge of NCL's credit terms with Inacom and NCL's other customers (also described in the accounts receivable reports that Ingram produced to Inacom in discovery and about which Mr. Gadsey testified during his deposition) is sufficient to provide a reasonable and reliable basis for his opinion about the ordinary business terms in the computer distribution industry. *See* Fed. R. Evid. 702 (expert witness must only possess "specialized knowledge" acquired by "skill, experience, training or education" to assist the trier of fact).

In addition, the law recognizes a sliding-scale of degree for the amount of

emphasis that the trier of fact should place on the requirement that the payments fall within "ordinary industry terms" as opposed to the actual terms between the parties. "[W]hen the parties have had an enduring, steady relationship, one whose terms have not significantly changed during the pre-petition insolvency period, the creditor will be able to depart substantially from the range of terms established under the objective industry standard and still find a haven in subsection C." *Molded Acoustical Prods.*, 18 F.3d at 226.

Here, the parties enjoyed a nine-month pre-insolvency payment history that included in excess of $18 million of payments. The focus of the trier of facts' attention should therefore be on the actual terms of payment between NCL and Inacom.

Finally, there is no requirement that Mr. Gadsey be able to provide testimony covering the entire universe of other companies' credit terms in the computer industry. Certainly, his 20-year experience in the computer industry and his knowledge of the payment terms between NCL and Inacom, NCL and its other customers, and some of NCL's competitors with their customers, is sufficient to permit his testimony to be offered into evidence. *Accord Cherrydale Farms*, 2001 WL 1820323, at *5 (holding that the testimony of the creditor's employee was not only sufficient to demonstrate the "ordinary business terms" in the industry, but that the Court could not think of "better witness" to provide such evidence). The weight accorded to his testimony should be determined by the trier of fact, not by Inacom prior to the time of trial.

## IV.    CONCLUSION

For the foregoing reasons, InaCom's motion to exclude the expert testimony of Steven Gadsey should be denied and Mr. Gadsey should be permitted to testify regarding both the industry standard as to payment terms and the ordinary business terms for the payment of invoices in this adversary proceeding.

DATED:  August 29, 2005

By: _____
Thomas G. Macauley (ID No. 3411)
ZUCKERMAN SPAEDER LLP
919 Market Street, Suite 990
P.O. Box 1028
Wilmington, Delaware  19899-1028
Tel.: (302) 427-0400
Fax: (302) 427-8242

-and-

Jonathan P. Hersey (CA Bar No. 189240)
Scott B. Lieberman (CA Bar No. 208764)
SHEPPARD, MULLIN, RICHTER &
HAMPTON LLP
650 Town Center Drive, 4th Floor
Costa Mesa, CA  92626
Telephone:  (714) 513-5100
Facsimile:  (714) 513-5130

Attorneys for Defendant
INGRAM ENTERTAINMENT INC.