IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re INACOM CORP., *et al.*, | Bankruptcy Case No. 00-2426 (PJW) |
| INACOM CORP., on behalf of all affiliated Debtors,<br>Plaintiff,<br>v.<br>INGRAM ENTERTAINMENT INC., as successor in interest to NASHVILLE COMPUTER LIQUIDATORS, L.P.,<br>Defendant. | Civil Action No. 04-593 (GMS)<br>[Bk Adv. Case No. 02-3960 (PJW)]<br><br>**Related Docket No. 45** |

### PLAINTIFF'S OPPOSITION TO MOTION TO EXCLUDE EXPERT TESTIMONY AND REPORT OF DEAN VOMERO

Defendant's Motion distorts the intended expert testimony of Mr. Vomero, and is unwarranted in fact and law. In fact, any attack on Mr. Vomero for using financial reports prepared as of the pertinent valuation period, but actually completed thereafter (as are virtually all financial statements) is preposterous.

In stark contrast to Mr. Vomero's review of all available information regarding the Debtors' financial condition, Defendant's experts refused to consider financial reports available shortly after their April 22, 2000 valuation date, including information as to the Debtors' financial performance prior thereto. Thus, the Motion actually exposes the misguided methodology used by Defendant's experts, and the consequent lack of credibility in their opinions. The Motion should be denied.[1]

---

[1] The Motion should be denied as a matter of procedure, because Defendant failed to (i) identify this or any other motion in limine in the parties' joint Pretrial Order filed on August 15, 2005, and (ii) comply with the Court's rules limiting motions in limine to 5 pages. (The Motion is 7 pages long.)

42125-003\DOCS_DE:111197.1

## STATEMENT OF FACTS

The Motion is based on a single bald and unsupported assertion that Mr. Vomero "...used in his valuation substantial facts and events not knowable to the reasonable buyer and seller in the market place at the time of the valuation." Defendant has not cited a single example of such a fact or event, other than the Debtors' June, 2000 bankruptcy petition, which Mr. Vomero did not use in reaching his valuation.

In sum, Mr. Vomero's rebuttal report used data from financial statements prepared as of March 25 and April 22, 2000, but actually completed in late April and early May, 2000. This financial information reflects the Debtors' actual performance information for the year to date in each instance. As the evidence will reveal, the truth regarding the weakness of Inacom's financial condition was not known or fully understood until revealed through a series of events in mid to late April and the publication of results for Inacom's performance for these time periods, which were reported in May. By late April, Inacom's new CFO concluded that he could not "believe any number coming out of Inacom." (Fitzpatrick Depo. pp. 41, 123).

To ignore the March and April financial information that became available shortly thereafter May is to grossly distort the Debtors' actual financial condition as of the April 22, 2000 valuation date chosen by Defendant's experts. Nonetheless, Defendant's experts intentionally excluded this information in reaching their valuation.[2] In fact, the Duff/Sasco reports do not incorporate actual performance data for 2000, relying solely on *projections* prepared on or before February 16, 2000, which projections were shown to be wildly unrealistic

---

[2] See Depo. of Richard Whalen, p. 43, ln. 25 – p. 44, ln. 8, p. 48, ln. 4 – 7; Depo. of Jason Fensterstock, p. 35, ln. 8-10, 22-25). Defendant's experts support their approach by reference to valuation texts. (Whalen Depo. p. 48, ln. 12 - 22). (Copies of the excerpted pages are attached hereto as Exhibit "A").

when compared to actual performance data. (*See* Charts measuring projections vs. actual performance, Exhibit "B" hereto.)

Since market value contemplates willing and "informed" buyers and sellers, it is disingenuous to ignore information of which a potential buyer would be aware based on events, but the actual financial results of which would not be known until shortly thereafter. Defendant's valuation approach is simply impractical and strains credibility.

### THE MOTION SHOULD BE DENIED

None of the positions or authorities cited by Defendant supports the exclusion of Mr. Vomero's testimony. Nor does the Motion identify any specific instances to support its bald assertions regarding the unreliability or irrelevance. To the contrary, the authorities in the highlight basic questions as to the credibility of the methodology employed by Defendant's experts, and any value to their opinions.

**A.    Defendant Misuses the Notion of "Going Concern" and Misrepresents Vomero's Opinion.**

Defendant's discussion of the notion of "going concern" is highly misleading, for *TWA*, et al do not suggest that "going concern" can only be sold as a whole. *TWA* makes clear that (1) sale of "going concern" assets "implicates a fair market valuation," 134 F.3d 188, 194 (3d. Cir. 1998), and (2) the "overwhelming body of authority...makes clear that a fair valuation of assets contemplates a conversion of assets into cash during a reasonable period of time." *Id.*[3] As such, an insolvency analysis clearly requires evidence of the fair market value of the Debtor's assets assuming **a conversion to cash** over a reasonable period of time. "The competing view

---

[3] A "reasonable" time period is examined from the eyes of a typical creditor seeking to collect a debt from the debtor. *TWA*, 134 F.3d at 195.

that fair valuation contemplates a hypothetical sale without regard to the pressures of time fails in light of contrary authority." *TWA*, 134 F.3d. at 195.[4] *Accord, Lids Corp. v. Marathon Investment Partners, L.P.*, 281 B.R. 535, 541 (Bankr. D. Del. 2002).

Defendant's experts appear to inappropriately take this contrary view, and thus, their opinions fail the "relevance test" suggested in the Motion. On the other hand, contrary to Defendant's assertion, Mr. Vomero has not presented a valuation on any "fire sale" basis, but determined value based on the *TWA* rule stated above.[5] Similarly, Mr. Vomero has measured debts at face value, as required by *TWA*; the Motion misrepresents that he presents the market value of the Debtors' liabilities and included costs of liquidation among contingent liabilities.

In sum, Mr. Vomero's methodology and opinion was prepared precisely as contemplated by *TWA*, and the oft-cited *TWA* bankruptcy court decision by Judge Walsh, 180 B.R. 389, 410 (Bkrtcy D. Del. 1994). Mr. Vomero's opinion of the Debtors' insolvency during the preference period is highly relevant and highly persuasive. Defendant's expert opinions, on the other hand, are neither, carefully limiting material facts to ensure a predetermined conclusion.

### B. Defendant Misuses the Notion of "Hindsight" and Misrepresents the Facts Considered by Vomero.

The Motion's citations on this point are all inaccurate and/or inapposite, calling into question the credibility of the entire Motion. *Total Technical Services*, contrary to the position

---

[4] The *Moody* and *Taxman* decisions involved fraudulent transfer claims, for which the Bankruptcy Code employs a different insolvency test than used for preference claims. Interestingly, in *Moody*, the 3rd Circuit notes that "to be 'saleable' an asset must have 'an existing and not theoretical market.'" 971 F.2d at 1067. This notion highlights the lack of credibility in Defendant's solvency analysis – it is entirely theoretical, ignoring critical facts that demonstrate the lack of a market for the Debtors as an enterprise.

[5] In this context, "liquidation" is a synonym for "conversion to cash"; the key to the analysis is the time period for liquidation. Defendant's "going concern" arguments clearly misunderstand this notion.

suggested by Defendant, states that "[f]air value is based upon information available to the parties during the preferential time period," criticizing reliance upon information that only became available after the filing of the bankruptcy petition. 150 B.R. 893, 900 (Bankr. D. Del. 1993). *Total Technical* would appear to support the consideration of all available information regarding the Debtors' financial condition around the time of the transfers, not the artificially narrow approach employed by Defendant's experts.

The only case cited that uses the term "hindsight," *R.M.L.*, concerned fraudulent transfer claims, not preferences. This is a critical distinction because the court's criticism of hindsight arises from a concern that LBOs that ultimately fail be viewed only from evidence available at the time of the transaction. 92 F.3d 139, 155 (3d. Cir. 1996).[6]

Dated: August 29, 2005

PACHULSKI, STANG, ZIEHL, YOUNG, JONES & WEINTRAUB P.C.

*/s/ signature*

Laura Davis Jones (DE Bar No. 2436)
Sandra G. McLamb (DE Bar No. 4283)
919 North Market Street, 16th Floor
Wilmington, Delaware 19899-8705 (Courier 19801)
Telephone: (302) 652-4100

Andrew W. Caine (CA Bar No. 110345)
10100 Santa Monica Blvd., 11th Flr.
Los Angeles, California 90067
Telephone: (310) 277-6910
Counsel for Plaintiff, INACOM CORP

---

[6] Neither *TWA* nor *Lids* makes any reference to the use of hindsight; the TWA reference to "subsequent dismemberment" related solely to notion that liquidation costs should be included among contingent liabilities. 134 F.3d at 197-198. The language attributed to *Davis* cannot be found in the decision, which stands only for the undisputed proposition that the insolvency evaluation should be performed at the time of the transfers. 120 B.R. at 825. *Payless Cashways* (290 B.R. at 705) and *DAK* (195 B.R. at 125), both bankruptcy court decisions from outside the Third Circuit, discussed subsequent events only in the context of whether to use "fair" or distress value for the debtor's assets.