IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re INACOM CORP., *et al.*,<br><br>Debtors.[1] | Bankruptcy Case No. 00-2426 (PJW) |
| INACOM CORP., on behalf of all affiliated Debtors,<br><br>Plaintiff,<br>v.<br><br>DEFENDANT INGRAM ENTERTAINMENT INC., as successor in interest to NASHVILLE COMPUTER LIQUIDATORS, L.P.,<br><br>Defendant. | Civil Action No. 04-593 (GMS)<br><br>[Adv. Proc. No. 02-3960 (PJW)]<br><br><br><br><br><br>**Related Docket No. 42** |

**PLAINTIFF'S OPPOSITION TO
DEFENDANT'S MOTION TO EXCLUDE
THE EXPERT TESTIMONY AND REPORT OF STUART A. GOLLIN**

---

[1] The Debtors are the following entities: InaCom Corp.; InaCom Latin America; InaCom Solutions, Inc.; InaCom Communications, Inc.; InaComp Financial Services, Inc.; Perigee Communications, Inc.; Networks, Inc.; Gorham Clark, Inc.; InaCom International, Inc.; InaCom Tennessee, Inc.; InaCom Professional Services, Inc.; Kure Associates, Inc.; Office Products of Minnesota, Inc.; Boston Computer Exchange Corporation; PC Technical Services, Inc.; Vanstar Corporation; Computerland International Development, Inc.; Computerport World Trade, Inc.; Vanstar International Corporation; VST West, Inc.; VST Illinois, Inc.; VSTNC, Inc.; Cland Tex, Inc.; InaCom Government Systems, Inc.; Contract Data, Inc.; Computer Professionals, Inc.; Vanstar Professional Technical Resources, Inc.

Initially, Defendant's Motion should be denied on procedural grounds as fails to comply with and apparently seeks to circumvent the Court's Scheduling Order limiting motions in limine to five (5) pages in length. Substantively, Defendant's Motion should be denied because it fails to establish any facts or law to support the exclusion of Mr. Gollin's testimony and report as to ordinary payment practices in Defendant's industry. In order to establish the third element of the "ordinary course of business defense" under Bankruptcy Code § 547(c)(2)(C), Defendant must prove the ordinary payment terms in its industry, based on objective evidence. In the Pretrial Order, however, Defendant has not proffered any exhibit or witness with the requisite statistical analysis or other objective evidence on this element.[2]. As a result, Defendant will be unable to make its prima facie case for this defense.

Apparently scrambling, Defendant has filed this Motion to focus its efforts on excluding Mr. Gollin, the only expert who surveyed the industry as a whole and compiled payment data from objective sources regarding companies that Defendant admits are in its industry. Mr. Gollin's report and testimony meet the recognized two-step inquiry for the introduction of expert testimony. Defendant's challenges to Mr. Gollin's choice and relative weight given to certain data does not make his testimony inadmissible. Defendant will have ample opportunity to cross-examine Mr. Gollin on his methodology.[3] The Motion should be denied.

## I.  THE 547(C)(2)(C) INDUSTRY TERMS DEMANDS OBJECTIVE EVIDENCE SUCH AS THAT GATHERED BY MR. GOLLIN.

Defendant bears the burden to prove all three elements of the ordinary course defense under Section 547(c)(2). 11 U.S.C. § 547(g). Where, as here, the parties shared a relatively brief relationship prior to the preference period (here – 7 months), the ordinary industry practice under Section (c)(2)(C) plays a more prominent role in the analysis of the ordinary course of business defense. *In re Molded Acoustical*, 18 F.3d 217, 221 (3d Cir. 1994); *In re U.S. Interactive, Inc.*, 321 B.R. 388, 392 (Bankr. D. Del. 2005).

The analysis of ordinary industry practice is objective, and requires evidence of practices by the defendant's competitors, to which the preference period transactions between the debtor

---

[2] See Plaintiff's Motion to Exclude The Expert Testimony of Stephen Gadsey (Docket # 58)

[3] If Defendant fails to establish its prima facie case for the defense, then the Court will not have to hear from Mr. Gollin.

and the defendant are then compared. *U.S. Interactive*, 321 B.R. at 392. Specific, objective evidence is particularly important where the defendant is attempting to shield late preferential payments by the debtor. *Id.* at 393-394 (rejecting generalized statements, guessing and approximations to the industry standard). "[C]ourts look for objective, definitive evidence supported by specific data to meet the burden of proof." *Id.*; *Hechinger Liquidation Trust v. Rager*, 298 B.R. 240, 242 (Bankr. D. Del. 2003). As noted above, Defendant will fail to present the requisite evidence to establish this requisite element.

## II. DEFENDANT'S AUTHORITIES DO NOT SUPPORT EXCLUSION OF MR. GOLLIN'S REPORT OR TESTIMONY

While the Motion purports to be premised under Federal Rules of Evidence 702, "the Federal Rules of Evidence are meant to instruct the District Courts in the sound exercise of their discretion in making admissibility determinations and should not be interpreted as exclusionary rules." *Voilas v. General Motors Corp.*, 73 F. Supp. 2d 452, 457 (D.N.J. 1999). To ascertain whether a proposed expert is qualified to act as a witness at trial, courts are directed to engage in a two-step inquiry:

> "First, the court should determine whether the proffered expert has minimal education or experiential qualifications in a field that is relevant to a subject that will assist the trier of fact.
>
> Second, if the expert passes this threshold test, the court should further compare the expert's area of expertise with the particular opinion the expert seeks to offer." *Id.* at 456.

### A.  Defendant's "Relevance" Argument is Misplaced

Exploring receivables collection practices for an industry "examined as a whole" involves the collection and review of data concerning a number of companies in the industry in which the defendant is engaged. *In re Kaypro*, 218 F.3d 1073-74 (9th Cir. 2000). A thorough review necessarily entails gathering as much data as possible because "the creditor's entire industry must be analyzed." *In re Sacred Heart Hospital of Norristown*, 200 B.R. 114, 117, 119 (Bankr. E.D.Pa. 1996) (noting the value of actual statistical evidence to reflect industry practice). *Accord, Molded Acoustical Products*, 18 F.3d at 227 (evidence of the debtor's dealings with the defendant and one of its subsidiaries was insufficient evidence of industry standards as a matter of law.)

As a C.P.A., Forensic Accountant, and restructuring advisor with extensive experience in bankruptcy matters, Mr. Gollin is well versed in accounts payable/receivables aging, gathering and compiling data in an organized and detailed fashion, and engaging in statistical analysis. His review of payment and collection practices in Defendant's industry involved gathering large amounts of data, synthesizing data, and presenting it in an objective fashion by one who is familiar with general accounting techniques and statistical analysis.

According to Defendant, FRE 702 mandates that Mr. Gollin be employed or trained in the computer reseller industry. This claim misstates the law. The Third Circuit has interpreted the specialized knowledge requirement "liberally." *St. Paul Fire and Marine Ins. Co. v. The Nolen Group*, 2005 WL 1168380 at *3 (E.D.Pa. 2005). It is an abuse of discretion to exclude an expert simply for lack of the specialization that the court considers most appropriate. *Id.*, citing *In re Unisys Savings Plan Litigation*, 173 F 3d. 145, 170 (3rd Cir. 1999).

Indeed, Defendant's argument is similar to that rejected in *Voilas, supra*, 73 F. Supp. at 457 (expert's lack of specific experience in the automotive industry or in creating or evaluating business plans did not impact his qualifications to review such plans and to summarize in a concise, and easy-to-understand fashion). *See Polymer Dynamics, Inc. v. Bayer Corporation*, 2005 WL 1041197 at *2 (E.D.Pa. 2005) (rejected notion that expert must have shoe industry experience to render testimony). The weight to be accorded testimony is left to the province of the trier of fact. *Voilas*, 73 F.Supp. at 457-458.

The two cases cited by Defendant are completely inapposite; neither concerned preferences, bankruptcy, any financial or business issue, or financial data analyses.[4] The Motion fails to cite any case, much less Third Circuit authority to support the exclude Mr. Gollin's financial analyses of the collection and payment practices for Defendant's industry.

---

[4] *Redman*, 111 F.3d at 1179, involved a products liability case concerning whether a safe was "burglar-proof" as advertised. The appeals court criticized the admission of the expert's testimony because he had never before analyzed a safe, engaged in the manufacture or design of safes, and was not personally familiar with the standards and rating systems for burglary protection capacity used in the safe industry; there is no suggestion that the lower should have excluded the witness from testifying. Barrett, 95 F.3d at 382, involved chemical exposure at Superfund sites, and proposed expert testimony regarding a study of the exposure of cotton rats to certain unidentified chemicals at the site, which the court rejected on the grounds that any connection between the study and some effect in humans "is merely a hypothesis without valid scientific connection to support it."

B. **Defendant's "Reliability" Argument is Misplaced**

The Motion misstates Mr. Gollin's report, data and testimony, using carefully selected excerpts from a very poorly conducted deposition. Here are the facts: Mr. Gollin has (1) gathered payment practice data from Dun & Bradstreet ("D&B"), perhaps the nation's the most renowned and reliable source for business credit information, (2) selected industries to examine based on the industries in which the remaining defendants engage (computer hardware manufacture, computer software, etc.), and used D&B's listings of the relevant companies in those selected industries – Mr. Gollin did not pick and choose which competitors to examine, (3) confirmed that Defendant's competitors are included with the D&B sample[5], (4) organized and supervised independent research to test whether the D&B data was an accurate reflection of industry practices, (5) reported D&B payment practice information for three separate industries (computer hardware manufacture, computer software manufacture and telecommunications), and (6) calculated a simple average of the payments practices using combined data for all three industries.

Contrary to Defendant's suggestion, .Mr. Gollin did not attempt to use the independent research to create a new sample of data extensive enough to stand on its own, nor did he attempt to verify the millions of lines of data used by D&B to prepare its reports. The D&B data is universally relied upon by credit managers as a reliable source[6]. Utilizing publicly-available documents such as industry-recognized Dun & Bradstreet reports, records on the internet and contact with representatives of the industry is entirely acceptable. *In re J. Allen Steel Co.*, 323 B.R. 425, 438 (W.D. Pa. 2005). Defendant's challenge to Mr. Gollin's above-described analysis arising out of the D&B data is simply without merit.

Defendant's challenge to the date of the D&B data is similarly misplaced. First, D&B uses a rolling reporting approach, by which it includes in its samples new data as it is gathered, but always maintains a sample size that contains information from the past approximately 18

---

[5] Mr. Gollin's sample included Logicare/Resilien and Tech Express, both confirmed by Defendant as its competitors. (Gadsey Depo. p. 58, lns 11-18, pp. 104-105, lns. 19-8, Exhibit A hereto, and Schedule 3 to the Gollin Report, Exhibit B hereto.)

[6] Defendant's own Credit Manager acknowledged that he utilizes Dun & Bradstreet reports in compiling data on customers (Gadsey Depo., pp. 108-109, Exhibit A hereto.)

42125-003\DOCS_DE:111206.1                                  4

months. Thus, the data gathered by Mr. Gollin in late 2003 included data from as far back as mid-2002. Second, earlier data is simply not available from D&B or any other source, rendering Mr. Gollin's report the most complete data available to assist the Court in its analysis. Defendant, on the other hand, as noted above, has not offered ANY objective industry data, and is not in a position to suggest that Mr. Gollin's data is unreliable.

In any event, based on the *Voilas* standard, Defendant's challenges do not support exclusion, but simply address the weight of the evidence. Mr. Gollin's testimony and report include objective evidence of payment practices in Defendant's industry "examined as a whole," as required by § 547(c)(2)(C). *In re Midway Airlines, Inc.*, 69 F.3d. 792, 797 (7th Cir. 1995) (defendant's entire industry must be analyzed" in the course of setting the forth the industry standards). Nonetheless, a party confronted with an adverse witness who has sufficient, "though perhaps not overwhelming facts and assumptions, as to the basis for his opinion, can highlight those weaknesses through effective cross-examination." *St. Paul Fire and Marine Ins.*, *supra,* 2005 WL 1168380 at *3.

Defendant confuses the standard enumerated in FRE 702 distinguishing "weight of the evidence" with admissibility. Mr. Gollin's review and presentation of data on industry practices in an organized fashion is reliable, relevant and highly useful to the Court's determination under Section 547(c)(2)(C). The Motion should be denied.

Dated: August 29, 2005

PACHULSKI, STANG, ZIEHL, YOUNG, JONES & WEINTRAUB P.C.

By _____
Laura Davis Jones (DE Bar No. 2436)
Sandra G. McLamb (DE Bar No. 4283)
Andrew W. Caine (CA Bar No. 110345)
Jeffrey P. Nolan (CA Bar No. 158923)
919 North Market Street, 16th Floor
Wilmington, Delaware 19899-8705
Telephone: (302) 652-4100
Attorneys for Plaintiff, INACOM CORP.