IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| INACOM CORP., on behalf of All affiliated Debtors, <br><br> Plaintiff, <br><br> v. <br><br> INGRAM ENTERTAINMENT, INC., Successor in interest to NASHVILLE COMPUTER LIQUIDATORS, <br><br> Defendant. | Civil Action No. 04-593GMS <br><br> Adversary Case No. 02-03960PIW |

DEPOSITION OF STEVEN GADSEY

August 3, 2005

Taken on Behalf of the Plaintiff

---

APPEARANCES:

For the Plaintiff:    Hon. Jeffrey P. Nolan
                      10100 Santa Monica Blvd.
                      11th Floor
                      Los Angeles, CA  90067

For the Defendant:    Hon. Jonathan P. Hersey
                      650 Town Center Drive
                      4th Floor
                      Costa Mesa, CA  92626

**ORIGINAL**

---

**MORGAN REPORTING SERVICE**
3352 Parsons Street
Murfreesboro, TN  37127-6427
(615) 890-7317

Reported by: Marilyn Gorski, CCR #0174

The deposition of STEVEN L. GADSEY, taken on behalf of the Plaintiff and taken pursuant to notice on August 3, 2005, beginning at approximately 10:00 a.m., at Two Ingram Blvd., Lavergne, Tennessee, pursuant to stipulations of counsel.

S T I P U L A T I O N S

It is agreed that the court reporter, being a notary public for the State of Tennessee, may swear the deponent, take the deposition on the Stenograph shorthand machine and afterwards reduce the same to typewriting when it may be used for all purposes provided by the Federal Rules of Civil Procedure governing depositions.

It is further agreed that the reading of the completed deposition by the deponent and the signature of the deponent are not waived.

```
 1   given to Tech Data?
 2        A.    No, I do not.
 3        Q.    Any other groups that Nashville
 4   Liquidators was selling to other than what
 5   you've been kind enough to testify to already?
 6        A.    They did have a store where they
 7   did sell to the public there at the office.
 8        Q.    That was just kind of come in,
 9   cash, get the equipment?
10        A.    Yes.
11        Q.    Can you tell me, in this 1999-2000
12   time frame, who were the competitors of
13   Nashville Liquidators?
14        A.    A company called Matrix, BLT, Tech
15   Express.  And their name has been changed to
16   Resilien now.
17        Q.    Resilien Logicare?
18        A.    Logicare.
19        Q.    Was Pincor a competitor?  In some
20   instances, I've heard of companies buying
21   product and also selling product to those two
22   entities, the same entity.
23        A.    Uh-huh.
24        Q.    Do you know whether or not
25   Nashville Liquidators not only sold product to
```

```
 1   now?
 2        A.   Yes.
 3        Q.   I should have taken John's advice
 4   in the beginning.
 5             With respect to some of NCL's
 6   competitors, such as Ingram, Micro, and Pincor,
 7   do you know whether or not their standard terms
 8   varied depending upon the size of the customer
 9   or the customer's creditworthiness?
10        A.   I'm not aware of those two
11   competitors.
12             MR. HERSEY:  I think the problem
13        was that you mentioned folks he didn't
14        identify as competitors.  Those were
15        vendors, Ingram, Micro.
16   BY MR. NOLAN:
17        Q.   Sorry if I may have just misstated
18   the question.
19             With respect to the competitors
20   such as -- what did we have?  Who are your
21   competitors?  Matrix?
22        A.   Logicare.
23        Q.   BLT -- do you know what their
24   standard terms were?
25        A.   I have seen Logicare's terms, and
```

```
 1    they range from 15 to 60 days.
 2        Q.    And those were the terms that you
 3    saw on Mr. Gollin's report?
 4        A.    Yes.
 5        Q.    And is it still your testimony that
 6    you don't know what the terms were for Matrix,
 7    BLT, Tech Express?
 8        A.    Yes.
 9        Q.    For any of the competitors of NCL,
10    do you know whether or not they utilized a cash
11    discount for early pay?
12        A.    No.
13        Q.    Do you know whether or not any of
14    the competitors in the industry for NCL varied
15    their terms depending upon the size of the
16    customer?
17        A.    I don't know.
18        Q.    Other than what you know about
19    Resilien and Logicare, do you know whether or
20    not any of NCL's competitors in the 1999-2000
21    time frame had more stringent or more lenient
22    payment terms than net 30?
23        A.    No.
24        Q.    In the 1999 to 2000 time frame, do
25    you know whether or not any of NCL's
```

```
 1                MR. HERSEY:  He can add to the
 2      question.  If you don't know without
 3      looking -- I think that's the answer.
 4           A.    I don't know without looking.
 5           Q.    I don't have it with me.  Okay.
 6      When did you review Mr. Gollin's report?
 7           A.    This morning.
 8           Q.    Did you contact any individual
 9      other than your lawyer concerning any of the
10      information in Mr. Gollin's report?
11           A.    No.
12           Q.    So you didn't call any other
13      vendors or any customers about any of the
14      information that was in there?
15           A.    No.
16           Q.    Have you ever utilized a Dun and
17      Brandstreet report before?
18           A.    Yes.
19           Q.    In what capacity have you utilized
20      a Dun and Brandstreet report?
21           A.    Looking at the specifics of a
22      company.
23           Q.    And what type of specifics of a
24      company?
25           A.    Their financial statements, payment
```

```
 1  history.
 2      Q.    When would you have done that?  You
 3  mean as a normal course of working at Nashville
 4  or Ingram?
 5      A.    Possibly at Nashville.  Definitely
 6  at Ingram.
 7      Q.    When you have utilized the Dun and
 8  Brandstreet report, are you trying to look at
 9  the financial position of a company?  What's
10  the purpose for actually pulling a Dun and
11  Brandstreet report?
12      A.    The last time I looked at a Dun and
13  Brandstreet report, we were looking at the
14  competitors of a potential acquisition from
15  Ingram Entertainment.
16      Q.    Do you know whether or not any of
17  the management at Ingram Entertainment or the
18  salesperson at Nashville Liquidators ever used
19  Dun and Brandstreet reports in looking at any
20  of the customers of NCL?
21      A.    They may have.
22      Q.    They may have.  Do you have any
23  idea if they did or not?
24      A.    I mean, I would be guessing as to
25  which customers, if they did look at those.
```