# Exhibit B

1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

INACOM CORP., on behalf of )
All affiliated Debtors,      )
                             )
            Plaintiff,       )
                             )        Civil Action
v.                           )        No. 04-593GMS
                             )
INGRAM ENTERTAINMENT, INC.,) )        Adversary Case
Successor in interest to     )        No. 02-03960PIW
NASHVILLE COMPUTER           )
LIQUIDATORS,                 )
                             )
_____Defendant._____)

DEPOSITION OF STEVEN GADSEY

August 3, 2005

Taken on Behalf of the Plaintiff

---------------------------------------------------

APPEARANCES:

For the Plaintiff:   Hon. Jeffrey P. Nolan
                     10100 Santa Monica Blvd.
                     11th Floor
                     Los Angeles, CA  90067

For the Defendant:   Hon. Jonathan P. Hersey
                     650 Town Center Drive
                     4th Floor
                     Costa Mesa, CA  92626

# ORIGINAL

---------------------------------------------------

MORGAN REPORTING SERVICE
3352 Parsons Street
Murfreesboro, TN  37127-6427
(615) 890-7317

Reported by:  Marilyn Gorski, CCR #0174

54

1    Q.    Just so I make sure my question is

2  clear, something like, you know, net 15, you

3  know, 1 percent discount, net 30 for the

4  remainder?

5    A.    I don't recall anything like that.

6    Q.    Okay.  Were the payment terms

7  net 30 days, were those established by

8  Nashville Liquidators?

9         MR. HERSEY:  Object to form.

10   A.    I believe so.

11   Q.    And do you have any recollection in

12  the 1999 time frame of whether or not Nashville

13  Liquidators' terms for payment of outstanding

14  invoices was uniform to all customers?

15   A.    I don't think they were.

16   Q.    So you believe that other customers

17  in the 1999 time frame of Nashville Computers

18  or Nashville Liquidators had different payment

19  terms?

20   A.    Yes.

21   Q.    And the different terms in 1999, do

22  you know if it was based on any type of formula

23  or tiering system?

24   A.    I believe it was based on the

25  customer.  And, again, it was a management

1    decision by the president and by the management

2    of Ingram Entertainment, Inc.

3        Q.      Were you ever part of any of the

4    discussions with the management at Ingram

5    Entertainment, Inc., or with the president of

6    Nashville Computers as to establishing payment

7    terms for different clients?

8        A.      I don't recall being involved in

9    any of those conversations.

10        Q.      In the 1999 time frame, how would

11    you learn as to what customers' payment terms

12    were as established by Nashville Computers?

13        A.      I would have been instructed by the

14    president their terms.  We would have set them

15    up in the accounting system that we utilized.

16        Q.      So you would have learned what the

17    different customers' terms were when you set

18    the account up in the accounting finance

19    department?

20        A.      Yes.

21        Q.      As far as the clients of Nashville

22    Computers or Nashville Liquidators -- I've

23    messed up now, whether I was referring to it as

24    Nashville Computers or Nashville Liquidators.

25            MR. HERSEY:  Is it easier to use

80

1    document.

2         A.       Okay.

3                  (CONTINUANCE OF NOTICE WAS MARKED

4                  AS EXHIBIT 1.)

5         Q.       Before I ask you a question about

6    Exhibit 1, I would like to just ask you one

7    other question on that last topic we were on.

8                  Is it a fair statement, Mr. Gadsey,

9    that if Ingram Entertainment, which means

10   primarily the management at that entity or the

11   salesperson, changed the terms to Inacom

12   because they were being delinquent on an

13   account, that you would not have been privy to

14   that change of circumstance, or is it possible

15   you were privy to that?

16        A.       It's possible I would have been

17   privy to that.

18        Q.       Do you know whether or not that

19   actually occurred in early 2000?

20        A.       That the terms changed?

21        Q.       Right.

22        A.       They may have changed from 30 days

23   to 45 days.

24        Q.       And why do you say that?

25        A.       Because we did change our

1    Q.    Do you know what that's referring

2    to?

3    A.    Terms of sale with Inacom.

4    Q.    So for that account, that would

5    show Inacom invoices were due net 15 days from

6    date of invoice and net 30 days from date of

7    invoice?

8    A.    That's what it looks like.

9    Q.    Do you have any explanation as to

10   why there's two terms?  Or, I mean, have you

11   ever seen that in any of the other accounts at

12   NCL that might give you an explanation?

13   A.    I don't recall seeing that with any

14   other accounts.  I don't really know why it has

15   a range like that.

16   Q.    Could somebody at Ingram management

17   or the salesperson or a combination of the two

18   change the terms to Inacom in January of 2000?

19   A.    May have.

20   Q.    If they did, either one of those

21   entities did change the terms, would it be

22   normal for that to be reflected on this

23   accounts receivable aging report?

24   A.    Yes.

25   Q.    Below it, it says inside direct