Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2001 WL 708898
**(Cite as: Not Reported in F.Supp.2d)**

Page 1

**H**
Not Reported in F.Supp.2d, 2001 WL 708898
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court, E.D. Pennsylvania.
Basiru KANAJI,
v.
PHILADELPHIA CHILD GUIDANCE CENTER OF CHILDREN'S HOSPITAL.
No. CIV. A. 00-937.

June 20, 2001.

*MEMORANDUM ORDER*

WALDMAN.

*1 This is an employment discrimination case. Presently before the court are plaintiff's motions for leave to amend his complaint to substitute a defendant and to compel responses to a number of discovery requests. Plaintiff also requests that the court impose sanctions upon defendant for failing to comply with its discovery obligations.

Plaintiff was employed at defendant Philadelphia Child Guidance Center ("PCGC") from 1981 until his termination in November of 1997. From January 1994 until his termination, plaintiff was assigned to the Roots Life Program of PCGC's Community Program Division where he held the position of a Family Service Counselor. During plaintiff's employment through the filing of plaintiff's complaint, PCGC comprised a division of the Children's Hospital of Philadelphia ("Children's Hospital"). In January of 2001, PCGC legally merged into the Children's Hospital and ceased to exist as a separate entity. FN1

> FN1. With the substitution of Children's Hospital for PCGC as the proper defendant in this action, both PCGC and Children's Hospital will be referred to as "defendant" herein.

Plaintiff alleges that his termination for allegedly falsifying a report was a pretense for discrimination. He claims that he was actually terminated because of his age, FN2 gender and "African descent." Plaintiff indicates in his motion to compel that he will rely, at least in part, upon a theory of disparate treatment in the evaluation and discipline of employees by defendant. According to plaintiff, he was terminated after he used a correctional fluid to alter a report he submitted to his superiors. He avers that this practice was not unusual and that colleagues had used correctional fluid on their reports without suffering termination as a result.

> FN2. Plaintiff's complaint does not specify his age.

*Leave to Amend*

Plaintiff seeks leave to amend his first amended complaint to name Children's Hospital as the proper defendant due to the recent merger. Although plaintiff maintains that Children's Hospital was the proper party in interest to the first amended complaint, he nevertheless seeks leave to amend in an abundance of caution.

The court has not been provided with enough information regarding the initial corporate structure of Children's Hospital or PCGC to determine whether the Children's Hospital is the proper party in interest to plaintiff's first amended complaint. Nevertheless, it would appear that PCGC and Children's Hospital have at the very least shared a unity of interest, if not ownership, throughout this litigation. It is undisputed that PCGC merged into Children's Hospital in January 2001 and defendant has not suggested that the merger has substantively affected this lawsuit in any way. Such a substitution of corporate defendants to reflect a post-complaint merger is appropriate. *See* Fed.R.Civ.P. 25(c) (permitting substitution of parties when there has been a "transfer of interest"); *Luxliner P.L. Export, Co. v. RDI/Luxliner, Inc.,* 13 F.3d 69, 71 (3d Cir.1993) ("transfer of interest" for purposes of Rule 25(c) occurs "when one corporation becomes the successor to another by merger or other acquisition of the interest" of the original corporate party). *See also Virgo v. Riviera Beach Assocs., Ltd.,* 30 F.3d 1350, 1358 (11th Cir.1994) (allowing substitution of one corporate defendant for another after asset purchase); *DeVilliers v. Atlas Corp.,* 360 F.2d 292, 297 (10th Cir.1966) (Rule 25(c) substitution proper to reflect merger). The court will permit substitution of Children's Hospital for PCGC as the proper defendant in this action. FN3

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                          Page 2
Not Reported in F.Supp.2d, 2001 WL 708898
**(Cite as: Not Reported in F.Supp.2d)**

FN3. Plaintiff has sought to effectuate this substitution of parties pursuant to Rule 15(a). A plaintiff must provide a copy of the proposed amended complaint when seeking leave to amend pursuant to Rule 15(a). See Centifanti v. Nix, 865 F.2d 1422, 1431 n. 10 (3d Cir.1989); Ladd v. Plummer, 1993 WL 29120, at *1 (E.D.Pa. Feb.5, 1993). As Rule 25(c), however, provides the proper basis for substitution, plaintiff's failure to do so is immaterial.

*Deposition of Corporate Designee*

*2 Defendant has objected to any deposition of a corporate designee pursuant to Rule 30(b)(6). Defendant contends that as a result of the merger of PCGC into Children's Hospital, there are no officers, directors or managing agents of PCGC and that it cannot be required to produce former employees for a deposition. It further maintains that no current employees of Children's Hospital are sufficiently knowledgeable of the facts of plaintiff's case.

Rule 30(b)(6) requires a corporation to designate one or more officers, directors, managing agents or other consenting persons to testify on its behalf "as to matters known or reasonably available to the corporation." The purpose of the Rule is to facilitate the securing of a corporation's testimony, to limit "bandying" and to reduce the overall number of depositions needed. See Fed.R.Civ.P. 30(b)(6) advisory committee's note; Alexander v. FBI, 186 F.R.D. 148, 152 (D.D.C.1999). To this end, the Rule requires a corporation when necessary to prepare a witness with pertinent information reasonably available to it. See Triple Crown America, Inc. v. Biosynth AG, 1999 WL 492661, *1 (E.D.Pa. July 12, 1999); Rainey v. American Forest & Paper Ass'n, 26 F.Supp.2d 82, 94 (D.D.C.1998); Ierardi v. Lorillard, Inc., 1991 WL 158911, *3 (E.D.Pa. Aug.13, 1991). The burden is on a corporation seeking to avoid compliance on the basis that the information sought is not known or reasonably knowable to move for and justify a protective order. See Fed.R.Civ.P. 26(c); Rainey, 26 F.Supp.2d at 94; EEOC v. Thurston Motor Lines, Inc., 124 F.R.D. 110, 114 (M.D.N.C.1989). Even then, claimed lack of knowledge is generally not sufficient for a protective order as the other side may test this claim by deposing the witness. See Ierardi, 1991 WL 158911 at *1.

It is unclear whether defendant claims there are no current employees of PCGC to testify because all former PCGC employees are now considered employees of Children's Hospital or because all former PCGC employees are no longer associated with the hospital in any way. FN4 If it is the former, defendant may not rely on a technical distinction to thwart the purpose of Rule 30(b)(6) to secure the testimony of someone on the corporation's behalf whose interests are aligned with those of the corporation. Certainly a former officer of PCGC currently employed by Children's Hospital would be in a position to bind Children's Hospital who is the former parent and current successor in interest to PCGC. FN5 Even if it is the latter scenario, defendant has not demonstrated that it has no ability sufficiently to familiarize a designee with the activities and policies of PCGC, the Roots Life Program and other information pertinent to plaintiff's case.

FN4. Defendant states that employees with "specific knowledge" of plaintiff's claims are no longer employed. As noted, a corporation cannot avoid designating a Rule 30(b)(6) deponent by claiming that no individual employee possesses specific knowledge of plaintiff's claims. See Ierardi, 1991 WL 158911 at *1. Moreover, the deposition notice seeks information concerning, inter alia, general employment practices and procedures at PCGC about which someone without "specific knowledge" of plaintiff's claims presumably could testify.

FN5. If former officers, directors or managing agents of PCGC are now employed by Children's Hospital in lesser positions, a corporation may designate other consenting persons to testify. Of course, a non-managerial former employee of PCGC may also educate an officer, director or managing agent of Children's Hospital as to information relevant to plaintiff's case.

This is not a situation where one company has acquired another company with which it previously had no involvement. Prior to the merger, PCGC operated as a division of Children's Hospital. Defendant acknowledges that merger activities between the two entities commenced in 1996, prior to the events leading to plaintiff's termination. From that time on, PCGC employees became subject to Children's Hospital's rules and grievance procedures.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                Page 3
Not Reported in F.Supp.2d, 2001 WL 708898
**(Cite as: Not Reported in F.Supp.2d)**

Once the merger was completed, Children's Hospital presumably took possession of all PCGC records and files as prudent business practice would dictate.

*3 As a practical matter plaintiff may wish to serve Children's Hospital with a renewed Rule 30(b)(6) notice reflecting its substitution. Children's Hospital shall thereafter designate an appropriate individual or individuals for deposition.

*Deposition of Former Employees*

Plaintiff has noticed the depositions of Michelle Chapman, Patricia Urban, Eileen Morris and Denise Outlaw, former administrative employees at PCGC. Defendant has agreed to ensure the appearance of these former employees for depositions upon proper notice, but accuses plaintiff of failing to make a good faith effort to schedule these depositions. The court will require counsel to cooperate in scheduling these depositions, however, if defendant does not produce these former employees for deposition by July 10, 2001, plaintiff may proceed to subpoena and depose these individuals without defendant's acquiescence.

*Personnel Files of Similarly Situated Employees*

Plaintiff seeks the personnel files of all Family Service Counselors or other employees "similarly situated" to plaintiff from one year prior and one year subsequent to his termination. Plaintiff asserts that these files are relevant to show that he was "equally or better qualified [than these other employees] for the position from which he was terminated."

Relevance is construed broadly for purposes of discovery. See Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 350, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978) ; Getz v. Pennsylvania Blindness & Visual Servs., 1998 WL 961901, *1 (E.D.Pa. Dec.18, 1998). The term, however, is not unlimited. For a Title VII plaintiff alleging disparate treatment to obtain discovery regarding other employees, he must allege something more than the fact that he shared a position in common with them. He must also allege that these "similarly situated" employees engaged in conduct similar to his. See Northern v. City of Philadelphia, 2000 WL 355526, *3 (E.D.Pa. Apr.4, 2000) (plaintiff only entitled to personnel files of employees who were charged with similar misconduct); Getz, 1998 WL 961901 at *2 ("Discovery in disparate treatment cases has been limited to employees within certain work units and who have suffered similar treatment as the plaintiff"); Wittingham v. Amherst College, 164 F.R.D. 124, 127 (D.Mass.1995) (same). See also Northern, 2000 WL 355526, at *3 (discovery of personnel files, although permissible, should be limited whenever possible); Miles v. Boeing Co., 154 F.R.D. 112, 114 (E.D.Pa.1994) (same).

Plaintiff's job qualifications relative to his colleagues is not an issue. The court will thus compel production of personnel files only for employees of PCGC who were accused of falsifying, tampering with or altering reports and then, only the portions of any such personnel files reflecting the accusations and discipline imposed.

*Personnel Files of Decisionmakers*

*4 Plaintiff also seeks the personnel files of Cynthia Chestnut and Deborah Tanksley-Brown, the supervisors responsible for the decision to terminate him. Plaintiff contends that he is "entitled to know whether and how these individuals were evaluated based on their supervisory skills in general and more specifically their treatment of and decision to terminate the plaintiff." Ms. Chestnut's and Ms. Tanksley-Brown's overall competence as supervisors is not an issue. To the extent that their personnel files contain information concerning their decision to terminate plaintiff, such is discoverable. Otherwise, the contents of their personnel files are not discoverable.

*Plaintiff's Personnel File*

Plaintiff asserts that defendant failed to produce the entirety of his personnel file including copies of performance evaluations and commendations, and that he has received only copies of outdated worker's compensation claims. Defendant maintains that it produced on April 28, 2000 all documents that it possesses concerning plaintiff's employment.

Plaintiff is entitled to discover the contents of his own personnel file. It is hard to believe that the entirety of the personnel file of someone employed for thirteen years would consist of a few outdated worker's compensation claims. The court can only presume that either plaintiff is mistaken as to the documents that defendant produced on April 28, 2000 or that defendant has not produced plaintiff's entire personnel file. Defendant will be required to file an affidavit of a knowledgeable official

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                              Page 4
Not Reported in F.Supp.2d, 2001 WL 708898
(Cite as: Not Reported in F.Supp.2d)

identifying what documents already produced were derived from plaintiff's personnel file and as to any other documents which would ordinarily be contained in a personnel file, explaining why they are missing and what efforts have been made to locate or replicate them.

*Defendant's Responses to Interrogatories*

Plaintiff seeks to compel responses to interrogatories 5, 8, 11, 12, 13, 14, 16, 17, 18 and 19.

Defendant's responses to interrogatories 12 and 17, referring plaintiff to the Human Resources Policy and Procedure Manual ("Manual") or documents produced on April 28, 2000, appear adequate and plaintiff has not explained how these responses are deficient.

Interrogatory 5(c), read together with Document Request 1, seeks all information relating to plaintiff's termination. Plaintiff avers that defendant has not produced a copy of the report which plaintiff was accused of falsifying. The relevance of this report is obvious and defendant will be required to produce it or file an affidavit from a knowledgeable official explaining defendant's inability to do so.

Interrogatory 8 seeks information concerning commendations and other awards plaintiff received while employed at PCGC. Whether as a part of the contents of plaintiff's personnel file or otherwise, this should be produced.

*5 Interrogatory 11, in conjunction with Document Requests 10 thru 16, seeks information regarding defendant's employment policies and procedures. Plaintiff asserts that he is aware of an employee handbook which defendant failed to turn over and that the Manual defendant provided does not cover the time of plaintiff's employment. While providing the Manual, defendant has objected that these requests are overbroad, unrelated to the subject matter of the suit or not limited to a reasonable time period. In express reference to the alleged employee handbook, defendant maintains that it has turned over all documents responsive to the relevant requests. FN6

> FN6. The circumstances surrounding this employee handbook are not altogether clear. Plaintiff has represented that he turned over a copy of this handbook to defendant. If so, plaintiff presumably already possesses a copy. On the other hand, defendant has implied that it does not possess a copy of this handbook. If the employee handbook that plaintiff describes does exist, it would be quite surprising if defendant does not have access to a copy of it.

The federal discovery rules are construed broadly and liberally. *See* Herbert v. Lando, 441 U.S. 153, 177, 99 S.Ct. 1635, 60 L.Ed.2d 115 (1979) ; Jeffries v. LRP Publ'ns Inc., 184 F.R.D. 262, 263 (E.D.Pa.1999). The party opposing discovery has the burden of proving that the requested discovery should be disallowed. *See* Etienne v. Wolverine Tube Inc., 185 F.R.D. 653, 656 (D.Kan.1999) ; Golden Valley Microwave Foods v. Weaver Popcorn, 132 F.R.D. 204, 207 (N.D.Ind.1990) ; Flag Fables, Inc. v. Jean Country Flags & Crafts, 730 F.Supp. 1165, 1186 (D.Mass.1989). Defendant has offered no support for its contention that plaintiff's requests for documents and other information reflecting defendant's employment policies and procedures are not discoverable in a discriminatory discharge case. Defendant's objection to the time period which spans the entire duration of plaintiff's employment, however, is well placed. The court will require defendant to produce documentation and other information regarding employment policies and procedures from one year prior to one year subsequent to plaintiff's termination, including defendant's Human Resources Policy and Procedure Manual covering the year of plaintiff's termination. FN7

> FN7. As of 1996, PCGC employees were subject to Children's Hospital's rules and procedures. In response to discovery requests concerning rules and procedures, defendant should thus provide information as to both PCGC and Children's Hospital.

Interrogatory 13 asks defendant to identify any complaints filed against it with any federal, state or local agency alleging employment discrimination. Defendant responded that no such complaint was filed as of July 1, 1998. Neither party has made the court aware of the time frame specified in the interrogatory, but plaintiff in any event has not specified why this response was inadequate.

Interrogatory 14 asks defendant to identify any action filed in any court charging defendant with employment discrimination. Defendant objects that

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

this interrogatory is overbroad, irrelevant and privileged. The initiation of a civil action is a matter of public record and clearly not privileged. Evidence of discrimination by an employer against others in the protected class may be relevant to prove intent. See Spulak v. K Mart Corp., 894 F.2d 1150, 1156 (10th Cir.1990); Phillips v. Smalley Maintenance Services, Inc., 711 F.2d 1524, 1532 (11th Cir.1983); Stair v. Lehigh Valley Carpenters Local Union No. 600, 813 F.Supp. 1116, 1119 (E.D.Pa.1993). Other similar charges of discrimination against defendant would thus clearly be reasonably calculated to lead to the discovery of admissible evidence. See Fed.R.Civ.P. 26(b)(1). The court will permit defendant to limit its response to the past five years.

*6 Interrogatory 16 seeks the identity of anyone who defendant hired to fill plaintiff's vacant position. Defendant has responded that plaintiff's position was not filled and plaintiff has not provided any explanation as to why this answer is insufficient. His motion to compel with respect to interrogatory 16 will be denied. FN8

> FN8. Of course, all parties have an ongoing duty to supplement their responses if and as circumstances change.

Interrogatories 18 and 19 ask defendant to identify those present when plaintiff was terminated and provide their version of what was said. Such requests are reasonable and defendant has offered no reason for not providing this information. FN9

> FN9. The court nevertheless cautions plaintiff that to the extent he intends to depose individuals present when he was terminated as to what was said, seeking this information in his interrogatories would constitute duplicative discovery which is prohibited. Plaintiff may wish to revise this request accordingly.

ACCORDINGLY, this day of June, 2001, upon consideration of plaintiff's Motions to Compel Discovery and for Leave to Amend Complaint (Doc. # 9, all parts), and defendant's response, consistent with the foregoing, IT IS HEREBY ORDERED that the Motion for Leave to Amend is GRANTED and Children's Hospital of Philadelphia shall be substituted for Philadelphia Child Guidance Center as defendant herein; and, the Motion to Compel is GRANTED in part and DENIED in part as follows:

defendant shall produce a corporate designee or designees, properly prepared to answer questions on matters described in plaintiff's notice, for deposition pursuant to Fed.R.Civ.P. 30(b) at a time to be agreed upon by the parties, if possible, but in any event by July 10, 2001;

plaintiff's request to compel the depositions of Michelle Chapman, Patricia Urban, Eileen Morris and Denise Outlaw is granted, and they shall appear for deposition at a time to be agreed upon by counsel but in any event by July 10, 2001;

plaintiff's request to compel production of personnel files of similarly situated employees is granted as limited herein;

plaintiff's request to compel production of the personnel files of Cynthia Chestnut and Deborah Tanksley-Brown is granted only to the extent that these files contain information regarding plaintiff's termination and is otherwise denied;

plaintiff's request to compel production of his own complete personnel file is granted, and defendant shall file an affidavit of a knowledgeable official identifying the documents already produced which were derived from that file and an explanation of why other documents ordinarily contained in personnel files are missing and what efforts have been made to locate or replicate them;

plaintiff's request to compel answers to interrogatories 5, 8, 11, 14, 18 and 19 is granted as limited herein;

plaintiff's request to compel answers to interrogatories 12, 13, 16 and 17 is denied; and,

*7 plaintiff's request for sanctions is denied.

E.D.Pa.,2001.
Kanaji v. Philadelphia Child Guidance Center of Children's Hosp.
Not Reported in F.Supp.2d, 2001 WL 708898

Briefs and Other Related Documents (Back to top)

• 2:00CV00937 (Docket) (Feb. 22, 2000)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.