UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| INACOM CORP., et al.<br><br>       Plaintiffs<br>v.<br><br>TECH DATA CORPORATION<br><br>       Defendants | Civil Action No. 04-CV-148 (GMS) |
| INACOM CORP., et al.<br><br>       Plaintiffs<br>v.<br><br>DELL COMPUTER CORP.<br><br>       Defendants | Civil Action No. 04-CV-582 (GMS) |
| INACOM CORP., et al.<br><br>       Plaintiff<br>v.<br><br>LEXMARK INTERNATIONAL, INC.<br><br>       Defendant | Civil Action No. 04-CV-583 (GMS) |
| INACOM CORP, et al.<br><br>       Plaintiff<br>v.<br><br>INGRAM ENTERTAINMENT, INC.<br><br>       Defendant | Civil Action No. 04-CV-593 (GMS) |

1

### DEFENDANT INGRAM ENTERTAINMENT INC.'S REPLY IN SUPPORT OF MOTION TO EXCLUDE TESTIMONY AND REPORT OF DEAN VOMERO

Defendant Ingram Entertainment Inc. replies in support of its motion (the "Motion") to exclude the testimony and report of Plaintiff's expert Dean Vomero and to Plaintiff's response on the Motion (the "Response") as follows:

#### A. Introduction

An intervening catastrophic liquidity crisis *after* the valuation dates caused the ultimate insolvency and bankruptcy of InaCom. On the valuation dates, however, InaCom was an operating viable company supported by sizeable lines of credit with substantial borrowing availability and with valuable contract rights with Compaq, one of which guaranteed $420 million incremental revenue over the next three years. Plaintiff's insolvency expert, Dean Vomero, has at least two fundamental failures of methodology. One, he uses a "liquidation" rather than a "going concern" valuation. Two, he relies upon circumstances and events subsequent to the valuation dates.[1]

#### B. Vomero Uses a "Liquidation," Rather Than a "Going Concern" Methodology

Vomero uses a "liquidation," rather than a "going concern" methodology. He improperly values InaCom's assets piecemeal, item-by-item, rather than as an operating whole with synergy among its assets. Vomero's piecemeal, item-by-item valuation method is revealed by the April 19, 2005 Bridge Associates Valuation Analysis, attached as Exhibit A hereto. For instance, Vomero gives a mere 5% "recovery value" to Inacom's furniture, fixtures, and equipment. *Id.* at 7. Additionally, when discussing Inacom's computer software, Vomero claims that it was unique to Inacom, thus, according to Vomero, giving it almost no value. *Id.* He also gives

---

[1] Plaintiff's asserted procedural objection to the Motion should be overruled because the parties identified that Vomero's testimony would be the subject of a motion in limine. *See* Proposed Final Pre-Trial Order, Tab 6 (D.I. 53).

2

virtually no value to Inacom's Goodwill, again showing that Vomero is valuing Inacom on a liquidation/forced sale basis. *Id.* at 8. Indeed, Vomero's entire methodology is to simply discount the value of Inacom's individual assets to arrive at a liquidation valuation.[2]

In construing and expounding upon *In re Trans World Airlines, Inc.*, Judge Walrath approved a definition of "fair valuation" in the context of a going concern as "the amount that may be realized if the <u>Company's aggregate assets are sold as an entirety</u>." *See In re Lids Corp.*, 281 B.R. 535, 543 (Bankr. D. Del. 2002) (underscoring added). Indeed, the market multiple methodology (earnings/revenue analysis) and comparable transaction methodology are appropriate methods for determining the going concern value of a company. *Id.* at 543-45. These valuation methods necessarily look at the total value of the enterprise and only make sense if valuing the enterprise as a whole, rather than by a piecemeal, item-by-item valuation. Moreover, the court in *In re Davis* elaborated on the proper valuation method when the business was a going concern:

> If the business is in fact being conducted at the relevant time, then its assets must be valued, not as isolated articles separated from the whole, but as parts of the whole and useful in that relationship. Only where a business is wholly inoperative, defunct, or dead on its feet will going concern valuation be abandoned in favor of an item by item fair market valuation.

*In re Davis*, 120 B.R. 823, 826 (W.D. Pa. 1990). Vomero's item-by-item analysis is akin to valuing a used, but functioning, automobile by focusing on the aftermarket value of its individual parts (e.g. steering wheel, tires, fenders) rather than on the value of the automobile as a whole.

### C.  **Vomero Improperly Uses Hindsight in His Valuation Analysis**

Vomero improperly uses hindsight in his valuation analysis by relying on events well

---

[2] Plaintiff, by footnote, attempts to erase the clear distinction between going concern and liquidation valuation by stating "liquidation is merely a synonym for conversion to cash." (Response at 4 n.6). This ignores the fundamental distinction between liquidation and going concern valuation. Indeed, Vomero testified it was irrelevant to him whether Inacom was a going concern. *See* Vomero Depo. Tr. at 128:6-14 (relevant pages attached as Exhibit B).

3

after the valuation date to reach an opinion on insolvency as of that date.[3] Inacom's discussion of the April 22 and March 25, 2000 financial statements is a red herring. Defendant objects, not to the use of the April 22 and March 25 financial statements, but to Vomero's use of events well after the relevant time period. Examples of Vomero's use of post-factum events include his frequent references to financial *projections* (not financial *statements*) of the Blackstone Group prepared *in May 2000* and to the bankruptcy proceedings filed on June 16, 2000.[4] Contrary to Inacom's assertion, Defendant's solvency experts, Messrs. Whalen and Fensterstock do not exclude, but explicitly use and rely on, financial statements for periods ended March 25 and April 22; but they do exclude from consideration "forecasts" prepared by the Blackstone Group, hired by Inacom in May 2000 to prepare financial projections to market the company. Inacom's excerpts from Whalen's and Fensterstock's deposition are misrepresentative of their testimony.[5]

Plaintiff attempts to distract from its use of hindsight by claiming that Defendant's citations on hindsight are "all inaccurate and/or inapposite." (Response at 4). Plaintiff, once again, is simply wrong. For instance, contrary to Plaintiff's assertion (Response at 4 n.4), *In re Taxman Clothing Co.*, 905 F.2d 166, 168 (7th Cir. 1990), is a preference case. Plaintiff also wrongly claims (Response at 5 n.5) that language cited by Defendant from *In re Davis*, 120 B.R. at 825, is not found in the decision. Finally, though Defendant does cite fraudulent conveyance cases that exclude use of hindsight in a solvency determination, Defendant also cites numerous cases dealing explicitly with exclusion of hindsight in preference cases. Plaintiff offers nothing to show why these cases or the proposition forbidding use of hindsight, for which they are cited, are inapposite.

---

[3] *See* Vomero Depo. Tr. at 230:6-16 (Ex. B).

[4] *See* Exhibit C hereto.

[5] *See* Exhibits D and E hereto.

4

Dated: Wilmington, Delaware
September 6, 2005

Respectfully submitted,

*[signature]*

Thomas G. Macauley (ID No. 3411)
ZUCKERMAN SPAEDER LLP
919 Market Street, Suite 990
P.O. Box 1028
Wilmington, Delaware 19899-1028
Tel.: (302) 427-0400
Fax: (302) 427-8242

-and-

Jonathan P. Hersey (CA Bar No. 189240)
Scott B. Lieberman (CA Bar No. 208764)
SHEPPARD, MULLIN, RICHTER &
HAMPTON LLP
650 Town Center Drive, 4th Floor
Costa Mesa, CA 92626
Telephone: (714) 513-5100
Facsimile: (714) 513-5130

Attorneys for Defendant
INGRAM ENTERTAINMENT INC.