# **EXHIBIT C**

Westlaw.

Slip Copy                                                                                                               Page 1
Slip Copy, 2005 WL 857350, 22 IER Cases 1612
(Cite as: Slip Copy)

Slip Copy, 2005 WL 857350, 22 IER Cases 1612
Briefs and Other Related Documents

United States District Court,E.D. Pennsylvania.
Jeff KLIMASKI and James Collins, Plaintiffs,
v.
PAREXEL INTERNATIONAL and Barnett International, Defendants.
No. Civ.A. 05-298.

April 4, 2005.

Karen L. Palermo , Rubin Fortunato Harbison & Dougherty PC, Paoli, PA, for Plaintiffs.
Bacardi L. Jackson , Jeremy P. Blumenfeld , Morgan, Lewis & Bockius LLP, Philadelphia, PA, for Defendants.

*MEMORANDUM AND ORDER*

JOYNER, J.

*1 Plaintiffs Jeff Klimaski and James Collins bring this action against their former employers, Defendants Parexel International and Barnett International (hereafter, "Parexel"), alleging defamation and retaliatory discharge in violation of the Sarbanes-Oxley Act. Plaintiffs have moved to consolidate this action with *Parexel v. Feliciano,* Civ. No. 04-3798, in which a counterclaim of retaliatory discharge was raised by another former Parexel employee, Oswaldo Feliciano. Defendants in this action oppose the motion for consolidation, and have moved to sever Plaintiffs Klimaski and Collins' claims on the grounds that each Plaintiff's right to relief arises from different transactions or occurrences and involves diverse issues and defenses.

*Facts*

In August of 2004, Parexel brought suit against former employee Oswaldo Feliciano for defamation, commercial disparagement, tortious interference with contract, breach of contract, and misappropriation of confidential information. Feliciano raised a variety of counterclaims, including a claim of retaliatory discharge under the Sarbanes Oxley Act. Feliciano, who worked as a Managing Systems Architect for Barnett, alleges that he was terminated for refusing to engage in illegal activity when requested to do so by his supervisor, and for reporting his supervisor's allegedly illegal activities. Specifically, Feliciano claims that Ann Carraher, Vice President of Barnett Educational Systems, wrongfully obtained the membership records of various private organizations and authorized the incorporation of these records into a Parexel marketing database. Between July of 2003 and October of 2003, Feliciano made complaints regarding the allegedly unlawful use of the database to various Barnett employees, including Ms. Carraher herself, Plaintiff Jim Collins, Head of Marketing Shaun Moran, Head of Human Resources Lisa Roth, Conference Group Director Naila Ganatra, and an unnamed IT employee. Upon Ms. Roth's request, Feliciano also assisted in an investigation conducted by Parexel employees Lorrie Ferraro and Andrew Smith, which resulted in Ms. Carraher's termination in April of 2004. On June 21, 2004, Feliciano himself was terminated. Defendants contend that Feliciano was terminated because he had an undisclosed ownership interest in an outside company, in violation of the terms of his employment agreement. The company in question, Innovative Media Machine ("IMM"), provided services to Parexel during the course of Feliciano's employment, and it is alleged that Feliciano was involved in approving payments to IMM, but never disclosed his conflict of interest.

In January of 2005, Plaintiffs Jeff Klimaski and James Collins brought this action again Parexel for retaliatory discharge under the Sarbanes Oxley Act. Each has since added a claim for defamation.

Plaintiff Klimaski worked as the Director of Business Planning Operations for Barnett. In August of 2003, Klimaski received a call from Barnett's external auditors, Ernst & Young LLP, informing him that a senior analyst had failed to provide supporting documentation for two pre-paid invoices. In investigating these two invoices, Klimaski found approximately $300,000 in additional expenses that were missing documentation. Upon realizing that the Barnett account had been significantly overstated, Klimaski contacted Plaintiff Collins to inform him of his findings. Between August and October of 2003, Klimaski discussed the account overstatements with Parexel Controllers Larry Green and Rick Anderson, SEC Reporting Director Barbara Chan, Vice President of Medical Marketing Services Jeff Ammons, and President of Parexel Consulting Group

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Andrew Morffew. Klimaski was terminated on April 28, 2004. Defendants allege that Klimaski was terminated for performance problems, including his failure to properly review financial records, and his refusal to respond to requests for information needed by Parexel to complete its investigation into the account overstatements.

*2 Plaintiff Collins, the Vice President of Operations for Barnett, first learned about the marketing database issues and account overstatements in August of 2003, from Feliciano and Klimaski respectively. According to Plaintiffs' Amended Complaint, Collins initiated contact with Mr. Smith and Ms. Ferraro regarding the database issues in October of 2003. At around the same time, Collins initiated contact with Mr. Smith and Mr. Ammons regarding the account overstatements. Collins also responded to requests by Parexel's in-house and outside counsel about these two issues. Collins was apparently unsatisfied with Parexel's investigation of these issues, and retained an attorney in December of 2003 to negotiate an "amicable separation" from his employer. Operating under the belief that his termination was imminent, Collins began preparations to launch a consulting company in February of 2004. In early March of 2004, Parexel's general counsel contacted Collins' counsel and informed him that Collins' concerns were being investigated, and that Parexel would like Collins to continue his employment. Collins contends that, despite the statements of Parexel's counsel, he was gradually stripped of his job responsibilities. Collins was terminated on April 28, 2004, shortly after Defendants learned that Collins had started a new business in violation of the terms of his employment agreement.

*Standards for Consolidation and Severance*

District courts have discretion, pursuant to Federal Rule of Civil Procedure 42(a), to consolidate actions involving common questions of law or fact where doing so will promote convenience and economy in judicial administration. *Rosario v. SCM Group USA, Inc.,* 2003 U.S. Dist. LEXIS 12250 at 3 (E.D.Pa.2003) (citing *Graphic Arts International Union, Local 97-B v. Haddon Craftsmen, Inc.,* 489 F.Supp. 1088, 1091 (E.D.Pa.1979)). The moving party bears the burden of persuading the court that consolidation is proper. *Watkinson v. Great Atlantic & Pacific Tea Co.,* 585 F.Supp. 879, 883 (E.D.Pa.1984).

It is also within a court's discretion to sever parties or claims that have been improperly joined. Fed.R.Civ.P. 21 ; *Norwood Co. v. RLI Ins. Co.,* No. 01-6153, 2002 U.S. Dist. LEXIS 5974 at 3-4 (E .D. Pa.2002). Pursuant to Rule 20(a), joinder of multiple plaintiffs is proper only where each plaintiff's right to relief arises out of the same series of transactions or occurrences, and there exists some common question of law or fact. Where plaintiffs fail to satisfy these requirements, the court may sever their claims. *Norwood,* 2002 U.S. Dist. LEXIS 5974 at 4. Furthermore, even where parties and claims have been properly joined, a court may, in its discretion, sever the claims to further convenience or to avoid prejudice to the parties or jury confusion. Fed.R.Civ.P. 20(b) , 42(b); see *Spencer, White & Prentis, Inc. v. Pfizer, Inc.,* 498 F.2d 358, 361 (2nd Cir.1974); *Sporia v. Pennsylvania Greyhound Lines,* 143 F.2d 105 (3rd Cir.1944).

*3 In determining whether multiple claims arise from the same transaction or occurrence, courts look to whether a "logical relationship" exists between the claims. See *Miller v. Hygrade Food Prods. Corp.,* 202 F.R.D. 142, 144 (E.D.Pa.2001) (citing *Mosley v. General Motors Corp.,* 497 F.2d 1330, 1333 (8th Cir.1974)). A logical relationship between claims exists where the claims involve the same factual and legal issues, where they are offshoots of the same basic controversy between the parties, or where separate trials of each claim would involve a substantial duplication of effort and time by the parties and the court. *Xerox Corp. v. SCM Corp.,* 576 F.2d 1057, 1059 (3rd Cir.1978). In employment discrimination cases, for example, a logical relationship has been found to exist between the claims of multiple plaintiffs who allege that they were discharged pursuant to a central company-wide policy of discrimination. See, e.g., *Miller,* 202 F.R.D. at 144; *Mosley,* 497 F.2d at 1333; *Boyer v. Johnson Matthey, Inc.,* No. 02-8382, 2004 U.S. Dist. LEXIS 9802 at 6-8 (E.D.Pa.2004). However, courts have discretion to sever plaintiffs' claims where they rest on logically distinct factual circumstances-for example, where the plaintiffs were discharged by different decisionmakers, under different circumstances, or for allegedly different reasons. See, e.g., *Grayson v. K-Mart Corp. .,* 849 F.Supp. 785, 788-789 (N.D.Ga.1994) (granting motion to sever factually distinct claims even where plaintiffs alleged a pattern of discrimination); *Bailey v. Northern Trust Co.,* 196 F.R.D. 513, 516-17 (N.D.Ill.2000) (granting motion to sever where plaintiffs alleged action by a common supervisory source but identified no discriminatory policy or procedure); *Hussain v. TCF Bank,* No. 03-9404, 2004 U.S. Dist. LEXIS

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

12035 at 5-7 (N.D.Ill.2004). In other words, severance may be appropriate where analysis of multiple claims of discrimination requires "a separate analysis of [each] plaintiff's work performance, qualifications, and the actions taken against him." *Hussain,* 2004 U.S. Dist. LEXIS 12035 at 6-7.

*Discussion*

Plaintiffs in this action seek consolidation of their claims and those of Oswaldo Feliciano in *Parexel v. Feliciano,* and vigorously oppose Defendants' motion to sever. Plaintiffs contend that all three allegedly unlawful terminations are logically related and appropriate for joinder. While some logical relationship may indeed exist between the claims brought by Klimaski, Collins, and Feliciano, this Court will deny Plaintiffs' motion to consolidate and grant Defendants' motion to sever because the facts of each party's retaliatory discharge claim are logically distinct. Furthermore, this Court finds that any potential benefit or convenience to allowing the parties to proceed jointly is outweighed by the likelihood of prejudice to the Defendants.

I. Distinct Factual Circumstances

While the claims of Klimaski, Collins, and Feliciano all rest upon the single legal theory of retaliatory discharge, and there is some similarity in terms of the allegedly improper activities reported by each party, joinder of the three parties is not warranted because the circumstances of each party's termination are factually distinct.

*4 A determination of whether Defendant Parexel discharged Klimaski, Collins, or Feliciano in retaliation for reporting activities protected by the Sarbanes Oxley Act requires a separate analysis of each party's work performance, qualifications, and the actions taken against him. *See Hussain,* 2004 U.S. Dist. LEXIS 12035 at 6-7. Significantly, the facially plausible justifications offered by Defendant for each party's termination are unique. Feliciano, who was allegedly terminated for an undisclosed interest in a company that contracted with Parexel, admits that his spouse's company, IMM, provided Parexel with temporary employee services during the course of his employment. Plaintiff Collins, who was allegedly terminated for engaging in outside employment in violation of his employment contract, likewise admits that he began his own company while working at Parexel. Finally, Plaintiff Klimaski, whose responsibilities as Director of Business Planning Operations included reviewing financial records and assisting with internal and external audits, was allegedly terminated for failing to do his job properly. In determining whether these proffered justifications are merely pretextual, a fact finder would need to independently analyze Feliciano and Collins' employment contracts and the nature of their outside interests, as well as Klimaski's job performance and work history.

Also relevant to this Court's decision to sever is that the nature of each party's allegedly protected reporting activity is factually distinct. Feliciano raised concerns only about the improper use of the marketing database, and apparently had no knowledge of the accounting overstatements identified and reported by Klimaski. Klimaski's only knowledge of the marketing database issues arose when he, along with other Parexel employees, was interviewed by Ms. Ferraro during her investigation of Feliciano's complaints. Plaintiff Collins is the only party with ties to both the marketing database and the account overstatements, and were it not for his involvement, Feliciano and Klimaski's claims would have no common basis in fact whatsoever.

Furthermore, a key factor in Sarbanes Oxley and retaliatory discharge claims is the employer's knowledge of the plaintiff's protected reporting activity. The evidence before this Court does not suggest that Klimaski, Collins, and Feliciano reported their various concerns to substantially the same parties or even through the same channels. Feliciano directed his concerns about the marketing database to various employees within the Barnett Educational Systems group, including his supervisor, Ms. Carraher, the heads of marketing and human relations, and an employee within the IT department. The bulk of Feliciano's contact was with Ms. Roth, the head of Human Relations for Barnett, and Parexel employee Ms. Ferraro, who allegedly directed Parexel's investigation of the database issues. Klimaski raised concerns about the account overstatements with various upper-level Parexel employees, including controllers Mr. Green and Mr. Anderson, SEC reporting director Ms. Chan, and individuals at the president and vice president level, including Mr. Ammons, who allegedly directed the investigation of the account overstatements. Collins, on the other hand, apparently initiated contact with only three individuals-Ms. Ferraro, Mr. Ammons, and Vice President of Medical Marketing Services Mr. Smith. While the fact that each party reported his concerns to different individuals is not necessary fatal

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

to Plaintiffs' request for consolidation, it certainly suggests that the three parties' reporting activities did not arise from the same transaction or occurrence. Furthermore, there is no evidence before this Court indicating that the same supervisors were involved in the decisions to terminate Collins, Klimaski, or Feliciano. Finally, although Collins and Klimaski were terminated on the same date, Feliciano was terminated nearly two months later, suggesting at the very least that his termination did not stem from the same basic controversy.

*5 A final significant factor in this Court's decision with respect to consolidation is the fact that Feliciano's allegations of wrongful termination were not raised independently, but arose as counterclaims in a suit brought by Parexel for commercial disparagement, misappropriation of confidential information, and breach of contract, among other claims. Parexel not only contends that Feliciano failed to disclose a conflicting business interest in violation of his employment contract, but also that, after his termination, Feliciano sent a defamatory email from the domain name "thetruthaboutparexel.com" to thousands of Parexel's employees, customers, and potential customers, using proprietary customer lists. As Feliciano's counterclaim for retaliatory discharge in violation of Sarbanes Oxley is merely one element of a suit involving various other factual and legal issues, we find that consolidation is inappropriate.

II. Prejudice to Defendants Outweighs Convenience

This Court further finds that severance is necessary to prevent the possibility of prejudice to Defendants. It is likely that allowing the claims of Collins, Klimaski, and Feliciano to proceed in a single action will bias Defendants generally and deflect the jury's attention from the merits of each individual plaintiff's claim. See Grayson, 849 F.Supp. at 790. Furthermore, it is likely that the evidence admissible for the purposes of one party's claim may not be admissible or relevant to the claims of his co-parties. Were Collins, Klimaski, and Feliciano to proceed by way of a single action, it would be extremely difficult for the jury, even if given limiting instructions, to consider each party's claim of retaliatory discharge independently of the others. See Henderson v. AT & T Corp., 918 F.Supp. 1059, 1063-1064 (D.Tex., 1996) ; Moorhouse v. Boeing Co., 501 F.Supp. 390, 393-94 (E.D.Pa.1980).

On balance, this Court finds that the likelihood of prejudice is greater than the possibility of convenience if the three parties were to proceed together. As Collins, Klimaski, and Feliciano each raised their concerns through a different set of supervisors, the only significant overlap in terms of reporting arises with respect to Ms. Ferraro, who responded to Collins and Feliciano's concerns regarding the marketing database, and Mr. Ammons, who responded to Collins and Klimaski's concerns regarding the account overstatements. Thus, the roster of witnesses presented by each party is likely to be different. Furthermore, as described above, the evidence relevant to each party's claim is likely to differ significantly. In determining whether Klimaski's dismissal was legitimate or pretextual, a jury will need to understand Klimaski's responsibilities as Director of Business Planning Operations, and examine his work performance in the months prior to his termination. This will require an examination of the account overstatements identified by Ernst & Young, and of Klimaski's involvement in their development and resolution. With respect to Collins' termination, a jury will need to analyze Collins' employment contract and determine whether the business he began while at Parexel violated the contract. A similar analysis will be necessary with respect to Feliciano and his interest in IMM. Furthermore, Feliciano's case will require presentation of significant evidence from the period after his termination, during which he allegedly misappropriated confidential information, defamed Parexel, and interfered with its business contracts. Given the varied nature of the evidence required to prove each party's case, this Court remains unconvinced that consolidation of the claims brought by Klimaski, Collins, and Feliciano will significantly further convenience or economy.

*6 An appropriate Order follows.

ORDER

AND NOW, this 4th day of April, 2005, upon consideration of Plaintiffs' Motion to Consolidate Cases (Doc. No. 2) and all responses thereto (Docs. No. 6, 7, 13), and Defendants' Motion to Sever Plaintiffs' Claims (Doc. No. 10) and all responses thereto (Doc. No. 14), it is hereby ORDERED that Plaintiffs' Motion to Consolidate is DENIED and Defendants' Motion to Sever is GRANTED.

Accordingly, the Clerk's Office is DIRECTED to establish separate case numbers and files for each Plaintiff's case, and to include in each new file all

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2005 WL 857350, 22 IER Cases 1612
**(Cite as: Slip Copy)**

Page 5

existing docket entries relating to Civ. Action No. 05-298. Each Plaintiff is granted twenty days from the date of this Order in which to file an Amended Complaint consistent with the terms of this Order.

E.D.Pa.,2005.
Klimaski v. Parexel Intern.
Slip Copy, 2005 WL 857350, 22 IER Cases 1612

Briefs and Other Related Documents (Back to top)

• 2:05cv00298 (Docket) (Jan. 21, 2005)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.